(No. 22403.—

THE FOREST PRESERVE DISTRICT OF COOK COUNTY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*— (AUGUST PUTKONEN, Defendant in Error.)

*Opinion filed June 19, 1934—Rehearing denied October 5, 1934.*

DeYoung, J., dissenting.

George A. Basta, and Thomas P. Octigan, (Theodore Stone, of counsel,) for plaintiff in error.

Sidney Lyon, (Daniel D. Carmell, of counsel,) for defendant in error.

Mr. Justice Farthing delivered the opinion of the court:

August Putkonen in 1932 was out of employment. He had been a sheet-metal worker and had a small shop at his home in Cook county where he repaired fenders and radiators from time to time. He had received aid from the Illinois Emergency Relief Commission, and when direct relief was supplanted by work relief he received a card or letter and was sent to the plaintiff in error, the Forest Preserve District of Cook county, where he worked, among other times, from June 30 to July 7, 1932. He got five dollars per day and was limited to six days' work a month. He claimed that he cut his right hand slightly with a broken bottle when loading trash and debris into a truck in Harms Woods, in the forest preserve district, on the last day he worked. From this blood poisoning de-

veloped. The testimony shows a permanent injury to at least three of the fingers of his right hand, some ankylosis of the joints of the fingers, impaired and limited motion in attempting to flex them, the presence of indurated or scar tissue in the palm of the hand, and adhesions between the tendons in the palm leading to the fingers and the sheath enclosing such tendons. Putkonen had six children, four of whom were under sixteen years of age. The arbitrator made an award in his favor by which the loss of use of his right hand was fixed at fifty per cent. This award found the temporary total disability lasted for a period of six weeks, and that the average weekly wages which furnished the measure of compensation were such that this weekly payment of compensation should be $14 per week for the six weeks' temporary total disability period and an additional eighty-five weeks on account of the permanent loss of use of the hand. On review the Industrial Commission confirmed that part of the award involving the $14 per week for six weeks but found the permanent loss of use of the right hand was twenty-five per cent. For this it ordered payment of $14 per week for forty-two and one-half weeks. The circuit court of Cook county sustained this latter award, and the cause is here by writ of error.

Plaintiff in error contends that the record fails to show, first, that it is engaged in any department of an enterprise or business which is declared to be extra-hazardous under section 3 of the Workmen's Compensation act; second, that it fails to show an existing relation of employer and employee, within the meaning of sections 4 and 5 of the act, between it and Putkonen; and third, that the manifest weight of the evidence is that Putkonen did not sustain an injury while working at the forest preserve district.

Putkonen worked with two or three other men under a foreman named William Tessien. Tessien testified that his truck was equipped with axes, picks and other tools for

use in the work to be done and that he told the men what they were to do. George H. Smith testified that he had been division superintendent of the park district for three years. It had about thirty regular employees scattered throughout the district, and maintenance was its principal activity. He had complete charge of the up-keep and laying out of any improvements, making way for the picnic people, and anything in connection with the public welfare in that division. He said further: "We have those men scattered over seven thousand acres of ground, and we are doing planting, transplanting, cleaning up debris, cleaning walks and repairing buildings," etc. The foreman, Tessien, testified that when the cans containing waste and trash were too heavy they were emptied on the ground and their contents were loaded into the truck which he drove, and Albert Fink, who also testified for the forest preserve district, admitted that their crew hauled one load of refuse on July 7, 1932.

Section 3 of the Workmen's Compensation act in part is as follows: "The provisions of this act hereinafter following shall apply automatically and without election to the State, county, city, town, township, incorporated village or school district, body politic or municipal corporation, and to all employers and all their employees, engaged in any department of the following enterprises or businesses which are declared to be extra-hazardous, namely:" Here follow ten sub-paragraphs, of which that numbered 7½ is: "Any enterprise in which sharp-edged cutting tools, grinders or implements are used, including all enterprises which buy, sell or handle junk and salvage, demolish or reconstruct machinery, except as provided in sub-paragraph 8 of this section." (Laws of 1929, p. 442; Smith's Stat. 1933, p. 1415.) Sub-section 8 has no application here.

Where a municipal corporation does not engage in any enterprise or business or carry on any endeavors which include those activities declared by section 3 of the act to

be extra-hazardous the corporation does not come automatically under the provisions of the act. (*Village of Chapin* v. *Industrial Com.* 336 Ill. 461.) The record must show affirmatively that the municipality was engaged in some one of the extra-hazardous enterprises or businesses enumerated. (*Board of Education* v. *Industrial Com.* 346 Ill. 505.) But the specific work engaged in by the employee need not be a part of such extra-hazardous undertaking or bring him in contact with it. (*Illinois Publishing Co.* v. *Industrial Com.* 299 Ill. 189.) The business or enterprise in which plaintiff in error was embarked was the maintenance of a forest preserve district for the public. The record shows that its main work was maintenance— removing debris, transplanting trees and shrubs, etc. Putkonen's foreman testified that the truck was equipped with axes, picks and other tools. Such sharp-edged tools are required and were used in the work of plaintiff in error, and clearly their use brings the district within the provisions of sub-section $7\frac{1}{2}$ of section 3 of the act above quoted.

Such cases as those which involve ordinary household equipment, such as was involved in *Therien* v. *Industrial Com.* 351 Ill. 166, and *Garren* v. *Industrial Com.* 340 id. 95, are not in point here and need no extended discussion to distinguish them from the case before us.

The contention of plaintiff in error that it is engaged in a governmental rather than a proprietary function, in support of which it relies upon the case of *Gebhardt* v. *Village of LaGrange Park,* 354 Ill. 234, is of no force in this case. The exceptions contained in section 5 of the act are of officials of the municipalities and members of certain fire departments and patrols. The basis of exception does not include any distinction as to the function of the municipal corporation. It is well established that it is the nature of the activities—*i. e.,* the business or enterprise of the employer—that determines whether the parties

are under the provisions of the act. (*Illinois Publishing Co.* v. *Industrial Com.* 299 Ill. 189.) The legislature has the right and power to make municipal corporations liable under the Workmen's Compensation act whether such injuries are the result of torts on the part of officers of those corporations or are mere incidents of the employment. In clear and unambiguous language the act includes municipal corporations as employers. Whether injuries are received by an employee of a municipal corporation engaged in a governmental or proprietary function is immaterial. *McLaughlin* v. *Industrial Board,* 281 Ill. 100.

On the question as to whether or not the relation of employer and employee was established by this record, it appears that the relief organization sent men furnished with credentials to the plaintiff in error to work. It paid them out of its own funds, took their receipts, called "identis," presented these receipts next day to the relief organization and was reimbursed. The foreman, Tessien, testified that he directed the men who worked under him, and Arthur Estes, a timekeeper for plaintiff in error, testified that he refused on August 5, 1932, to permit Putkonen to go to work because of the condition of his injured right hand. The foremen were instructed to report immediately an injury to any of the men working for plaintiff in error. Estes, the timekeeper, kept a record of all injuries. He testified that he discussed all injury cases with the division superintendent. This was done by Smith and Estes on August 5, 1932, when Putkonen was refused work and received a letter from plaintiff in error and was sent to the county hospital.

The case presents a situation similar to that where an employee is injured while working for a second employer to whom he has been loaned temporarily. Under the common law an employee in the general employment of one master may with his consent be loaned to another and become the employee of the master to whom he is loaned.

(*Allen-Garcia Co.* v. *Industrial Com.* 334 Ill. 390.) The existence of the Workmen's Compensation act does not change this rule and the test remains the same—that is, whether or not the employee becomes wholly subject to the control and direction of the second employer, and freed, during the temporary period, from the control of his original master. Under this rule it is immaterial that the plaintiff in error did not fix the wages and did not select Putkonen as an employee. The record shows it had complete control of his services and that it refused to permit him to go to work on August 5, 1932. The power to refuse to accept him implies the power to dismiss him, if for any reason the plaintiff in error had seen fit to do so. The relation of employer and employee is established by such a showing as is here presented. See *McLaughlin* v. *Antrim County Road Com.* 266 Mich. 73.

There remains only the question as to whether the decision that the injury arose out of and in the course of Putkonen's employment is against the manifest weight of the evidence. Putkonen's testimony is contradicted on some points, but there is sufficient corroborative testimony to establish the fact that, in addition to sand and other materials, Tessien's crew and truck hauled at least one load of refuse July 7. It is also shown that where the cans were heavy they were emptied onto the ground and their contents were then loaded onto the trucks. Putkonen came back to the office of the plaintiff in error with Fink, a witness for it, about ten days after his injury and returned on August 5, 1932, to go to work. He insists that he reported his injury to Estes, and that the latter telephoned to Smith, the division superintendent, on the occasion of the visit of Fink and Putkonen to the office. Estes and Smith had a conversation about Putkonen's injured hand on August 5, 1932, and sent him to the hospital with a letter from the forest preserve district. Putkonen certainly was not there as a malingerer but wanted to go to work

and was refused, as we have already pointed out. There is contradictory testimony in this record on many minor matters, but we do not consider that the whole record presents a case where the defendant in error has failed to establish his case by a preponderance of the evidence or that we would be justified in setting aside the decision of the arbitrator, the commission and the circuit court and in substituting our judgment for theirs.

For the reasons indicated the judgment of the circuit court is affirmed.

*Judgment affirmed.*

Mr. Justice DeYoung, dissenting.