(Nos. 2582 and 2583— )

JOHN REDENBAUGH, Claimant, vs. STATE OF ILLINOIS, Respondent.

*Opinion filed March 25, 1938.*

FRANCIS T. CARSON and LLOYD S. ENGERT, for claimant.

OTTO KERNER, Attorney General; MURRAY F. MILNE and SVEINBJORN JOHNSON, Assistant Attorneys General, for respondent.

MR. JUSTICE LINSCOTT delivered the opinion of the court:

These cases have been consolidated and will be considered together.

In the first instance, John Redenbaugh avers that he was employed at the University of Illinois, and was an employee of the State of Illinois, and had been an employee of the State since May 24, 1934; that his wages were fifty-seven and one-half cents per hour, for forty-four hours per week, and that while he was employed in ditching and laying of pipe, on the 16th day of August, 1934, and while in the course of his employment, a piece of pipe which was being laid, struck a street light, causing the globe on said light to fall and cut claimant's arm at his right elbow. Claimant further avers that he incurred a hospital bill at the Burnham City Hospital in the sum of Forty Dollars and Ten Cents ($40.10), and incurred a doctor's bill in the sum of Forty-one Dollars ($41.00).

Claimant presented the claim to the University of Illinois and no question of jurisdiction arises upon the record. He claims that he was temporarily totally incapacitated for work for a period of two weeks after the time of the accident.

Claimant is a married man and earns Twenty-five Dollars and Thirty Cents ($25.30) per week and files his claim for compensation in the sum of Fifty Dollars and Sixty Cents ($50.60), in addition to his doctor and hospital bills.

It was stipulated that claimant was employed as a laborer from May 24, 1934 to December 11, 1934, at a compensation of fifty-seven and one-half cents per hour and that on August 16, 1934, he suffered an injury to his right elbow, by reason of a twelve inch water main which the claimant was assisting to unload. The pipe rolled down between a tree and a light post, and hit the light post and broke the globe. The globe fell and cut claimant's arm, breaking a blood vessel near the right elbow, and also cut the back of his hand.

Claimant had three children under sixteen years of age.

Claimant contends that he was unable to work for a period of two weeks and has received no compensation whatever, and claims to be still suffering some disability.

The record discloses that the University of Illinois is a corporation created by statue.

Section 8, Paragraph (b) provides: "If the period of temporary total incapacity for work lasts more than six working days, compensation equal to fifty per centum of the earnings but not less than $7.50 nor more than $15.00 per week, beginning on the eighth day of such temporary total incapacity and continuing as long as the temporary total incapacity lasts, but not after the amount of compensation paid equals the amount which would have been payable as a death benefit * * *." The claimant in this case received Twenty-five Dollars and Thirty Cents ($25.30) per week. One-half of this sum is Twelve Dollars and Sixty-five Cents ($12.65). Paragraph (j) of the same section further provides: "Whenever in this section there is a provision for fifty percentum, such percentum shall be increased five percentum for each child of the employee, including children who have been legally adopted, under sixteen years of age at the time of the injury to the employee until such percentum shall reach a maximum of sixty-five percentum.

Claimant, therefore, would be entitled to Sixteen Dollars and Forty-five Cents ($16.45) for compensation, not being entitled to anything for the first week, together with his hospital bill in the sum of Forty Dollars and Ten Cents ($40.10) and his doctor's bill in the sum of Forty-one Dollars ($41.00),

or a total of Ninety-seven Dollars and Fifty-five Cents ($97.55).

This same claimant was injured a second time. He received the same amount of compensation as in the first instance, and on the 8th day of October, 1934, while in the course of his employment, he was struck in the right forearm by a pick which was in the hands of Woodrow Wilson, who was also working on the ditch. He alleges that a tendon in the forearm was completely severed, and that this tendon was tied by the attending doctor, and he claims a partial disability resulted.

In this instance his medical bill was Thirteen Dollars ($13.00), and apparently he had no hospital bill, and he contends that he was temporarily totally incapacitated for work for a period of two weeks after the time of the accident. He now claims to have had five children under the age of sixteen years of age, and claims. One Hundred Dollars ($100.00) for permanent partial disability and Fifty Dollars and Sixty Cents ($50.60) for total temporary incapacity for work for a period of two weeks, or a total of One Hundred Fifty Dollars and Sixty Cents ($150.60) in addition to his doctor's bill of Thirteen Dollars ($13.00).

A stipulation was entered into the effect that claimant was employed as a laborer from May 24, 1934 to December 11, 1934 at a compensation of fifty-seven and one-half cents per hour; that on October 9, 1934, he suffered an injury to his right forearm, and the stipulation is to the effect that at the time of the injury the plaintiff had three children dependent upon him under the age of sixteen years; that he was 46 years of age; that he is a citizen of the United States, and a resident of Champaign County, State of Illinois.

He testified that he was actually struck with a pick in the hands of a fellow worker; that the pick entered his right forearm about half-way between the elbow and the wrist, and that two leaders "popped up." He was asked if this injury broke the skin, and he replied that two leaders "popped up." He testified that he was helped in a truck and taken to the Health Office of the University where he saw Dr. Blackstone, and was sent from there to Dr. Dalton; that Dr. Dalton's bill was Sixteen Dollars ($16.00), and he testified that as the result of the injury, he was unable to return to work until October 22, and has not received any compensa-

tion. No question arises concerning notice. He testified that the injury still effects his arm; that it feels numb; that at night he wakes up and finds it hurting and has to rub it; that it has poor circulation. He was asked this question by his counsel:

Q. Do you think it makes you somewhat weaker and unable to work as well as you did prior to the injury?

His answer was "Yes."

On cross examination he was asked if he felt that the arm was improving and if there was any change in the condition of the arm, and he answered: "No. I can't say that there is."

Dr. Dalton was called. He was a physician in Champaign County and had been practicing 28 years. He attended the claimant on the 9th day of October, 1934, and treated him for a laceration of the forearm. Dr. Dalton testified that there was a lacerated wound extending beneath the skin; that he did not know of any tendons being exposed, and it was his recollection that the wound extended probably through the fascia; that he treated him until the 23rd day of October, 1934; that he did not think that there could be any permanent disability from a wound of that kind; that the wound extended into the muscle tissue but not the tendons.

Dr. Dalton was asked this question:

"In your experience have you ever known of a case where such an injury might have caused partial permanent disability?"

To this he replied:

"At times it is possible."

In answer to a question put to Dr. Dalton he testified that in his opinion there was no permanent injury.

Dr. J. Howard Beard testified and was questioned by claimant's counsel. Dr. Beard did not examine him at first himself. Claimant came again to the Health Service. This had nothing to do with his treatment. At that time he reported that he was coming along first rate. On November 6, he came in again and was given a form for Dr. Dalton to fill out as required by the Court of Claims. Later on he brought the form back and made a report to the effect that there was no permanent disability. Dr. Beard again examined the claimant on February 26, 1936. He examined the claimant to find out the function and strength of the arm. He first tested the arm to see whether he had proper pronation, supination,

flexion and extension, and found them to be all normal. He then testified that he tested his strength and found that he had strength and range in the action of the muscles of his arms. Dr. Beard gave him further tests and the claimant showed normal power in flexion, and showed better than average strength. Claimant contended that he had been off work for several weeks and then when he started working again he found difficulty in having a good grip, but Dr. Beard did not think that was possible.

Dr. Dalton was again recalled and he testified that he had examined the claimant since he had testified before. The gist of his testimony was that having examined the claimant it was his opinion that the claimant would have the possibility of some slight impairment, but that was merely a possibility. It was the doctor's opinion that there was the same amount of function in both hands, and he couldn't determine any difference in claimant's two arms, and on cross-examination, Dr. Dalton testified that claimant had good use of the arm, and he thought it would remain the same. It affirmatively appears that subsection 7½ of Sec. 3 of the Workmen's Compensation Act applies herein and the work in which plaintiff was engaged at the time of both his injuries, was "an enterprise wherein sharp-edged cutting implements were used." He is therefore entitled to the benefits of said Act, under the authority of the case of *Forest Preserve* vs. *Ind. Comm.* 357 Ill. 389.

In this state of the record no allowance can be made for any permanent disability.

Figuring compensation as was done in No. 2582, the claimant would only be entitled to one week's compensation for the second injury, or Sixteen Dollars and Forty-five Cents ($16.45), to be paid in the same manner as the prior claim, plus the doctor's bill in the sum of Thirteen Dollars ($13.00), plus Ninety-seven Dollars and Fifty-five Cents ($97.55) for items due in connection with the first injury as heretofore enumerated.

All of the money so found to be due the claimant herein is for temporary total disability and hospital and medical expenses and items incidental thereto, and are payable from the appropriation made under Senate Bill No. 483 from the "University of Illinois Revolving Fund," (Senate Bill No. 483, Sess. Laws, 1937 p. 239—No. 8), in the usual manner of disbursements therefrom, by the University authorities.