(No. 3021—

W. J. Mumm, Claimant, *vs.* State of Illinois, Respondent.

*Opinion filed June 13, 1939.*

Glen E. Chapman, for claimant.

John E. Cassidy, Attorney General; Glenn A. Trevor, Assistant Attorney General, for respondent.

Mr. Chief Justice Hollerich delivered the opinion of the court:

For some time prior to, and on December 4th, 1935, the claimant, W. J. Mumm, was in the employ of the respondent as an associate in plant breeding in the Agronomy Depart-

ment of the College of Agriculture of the University of Illinois, at a salary of $195.83 per month.

Claimant was employed to give class instruction, to do corn breeding work, and experiment work on corn variety test plots. On the date last mentioned, while in the performance of his duties, claimant was husking corn by hand at the DeKalb Experimental Field, which is operated for experimental and educational purposes by the University of Illinois, one mile south of the City of DeKalb. In the course of such work, an ear of corn was thrown in such manner as to strike him in the left eye, breaking one lens in the spectacles he was wearing, thereby causing pieces of glass to become embedded in the eye and penetrate the eyeball so deeply as to cause the fluid to be drained therefrom. He was immediately taken to the DeKalb Public Hospital where he was examined and given first-aid treatment. Thereafter he was treated by several eye specialists, and treatments of the eye were continued to and including the month of December, 1936.

Claimant incurred bills for medical services and hospitalization in the amount of $701.58, of which amount $42.00 was paid by the University of Illinois Hospital Association, of which claimant was a member, $130.23 was paid by claimant, and the balance of $529.35 remains unpaid.

Notice of the accident was given, and claim for compensation on account thereof was made within the time required by Section 24 of the Compensation Act.

It is admitted that the accident in question resulted in the permanent injury of claimant's left eye, and from all of the evidence in the record, it appears that he has sustained the permanent loss of fifty per cent (50%) of the sight of such eye, for which he claims compensation under the terms and provisions of the Workmen's Compensation Act of this State.

For a proper determination of the questions involved, it will be necessary to consider briefly the pertinent provisions of the Workmen's Compensation Act.

Section 3 of the Act defines the application thereof, and provides as follows:

"The provisions of this Act hereinafter following shall apply automatically and without election to the State, county, city, town * * * and to all employers and all their employees engaged in any department of the following enterprises or businesses which are declared to be extra-hazardous

namely:—" (then follows a list of ten specified enterprises or businesses which are declared by the Act to be extra-hazardous).

Section 4 defines the term "employer" as used in the Act, and provides as follows:

"The term 'employer' as used in this Act shall be construed to be:—

First—The State and each county, city, town, township * * * therein.

Second—Every person, firm, public or private corporation * * * engaged in any of the enterprises or businesses enumerated in Section 3 of this Act. * * *"

Section 5 defines the term "employee" as used in the Act, and provides as follows:

"The term 'employee' as used in this Act, shall be construed to mean:—

First—Every person in the service of the State, including all persons in the service of the University of Illinois on and after January 25, 1933, except members of the instructional, research and administrative staffs thereof, when not, at the time of the injury, actually engaged in an occupation declared to be extra-hazardous in Section three (3) of this Act, county, city, town, township," etc.

Prior to 1935, Section 5 of the Act read as follows:

"The term 'employee' as used in this Act, shall be construed to mean:—

First—Every person in the service of the State, county, city, town, township," etc., etc.

In 1935 said section was amended to read as first above set forth, that is to say, there was inserted therein the words, "including all persons in the service of the University of Illinois on or after January 25, 1933, except members of the instructional, research and administrative staffs thereof when not, at the time of the injury, actually engaged in an occupation declared to be extra-hazardous in Section Three (3) of this Act."

Prior to such amendment, every person in the service of the University of Illinois (being a person in the service of the State) was an employee within the meaning of such section; since the amendment, members of the instructional, research and administrative staffs are employees, within the meaning of such section, only if, at the time an injury is sustained, they are engaged in an occupation declared to be extra-hazardous in Section 3 of the Act.

Although Section 3 specifically provides that the Act shall apply automatically and without election to the State, county, city, * * * incorporated village, and to all employers engaged in any department of the several enterprises or businesses therein designated as extra-hazardous; and

although the State, and each county, city,    &ast;  &ast;  &ast;    and incorporated village is specifically designated in Section 4 as an employer; and although every person in the service of the State, county, city,  &ast;  &ast;  &ast;   incorporated village, is specifically designated in Section 5 as an "Employee;"—still the Supreme Court, in the case of *Village of Chapin* vs. *Industrial Commission,* 336 Ill. 461, held that the Act did not apply automatically to such Village. In that case the employee was injured while engaged in hauling dirt, to fill up holes in the streets. The only question in the case was whether the Village automatically came under the Act by virtue of Section 3 thereof. If so, the employee was entitled to compensation; if not, he was not entitled to compensation unless he could prove that the Village was engaged in some enterprise or business declared to be extra-hazardous by said Section 3.

In that case the court, after a careful consideration of the Compensation Act, and the several amendments thereto since the original Act was adopted, came to the conclusion that the provisions of the Act did not apply automatically to all cities and villages; and that in order that the municipal corporations mentioned in Sections 4 and 5 of the Act be bound thereby, it is necessary to show that such municipal corporations are engaged in some one of the enterprises or businesses which are enumerated in Section 3 of the Act as extra-hazardous. The law as stated in the Village of Chapin case was approved in the case of *Forest Preserve District* vs. *Ind. Com.,* 357 Ill. 389, where the court said:

"Where a municipal corporation does not engage in any enterprise or business or carry on any endeavors which include those activities declared by Section 3 of the Act to be extra-hazardous, the corporation does not come automatically under the provisions of the Act. The record must show affirmatively that the municipality was engaged in some one of the extra-hazardous enterprises or businesses enumerated."

So, in this case, the claimant must prove not only that he is an employee within the meaning of Section 5, but must also show that the respondent is engaged in an enterprise or business declared to be extra-hazardous by said Section 3.

Counsel for claimant, on page 2 of their Statement, Brief and Argument, admit that claimant probably would be classed as a Member of the Instructional or Research Staff or probably both instruction and research.

There is nothing in the record to indicate the claimant at the time of the injury was actually engaged in an occupation declared to be extra-hazardous in Section 3 of the Act, and consequently there is nothing to show that claimant was an "employee" within the meaning of Section 5 as amended, at the time of his injury; nor is there any evidence in the record to prove that the respondent is engaged in any enterprise or business designated as extra-hazardous in Section 3 of the Act.

Counsel for claimant contend that even though claimant was a member of the instructional staff, yet at the time of the accident he was doing the work of a laborer; that if a laborer was injured under similar circumstances, he would be entitled to compensation; and that therefore claimant should have the same right. Such, however, is not the law. Claimant bases his right of recovery on the Workmen's Compensation Act, and must bring himself within the provisions of the Act in order to be entitled to an award. The books are full of cases where there are similar inconsistencies, but such results always follow the application of general laws to particular cases.

Furthermore, if a laborer were injured while doing work similar to that in which claimant was engaged at the time of his injury, he would not be entitled to compensation under the Act.

The proviso of Paragraph 8 of Section 3 of the Compensation Act states that "nothing contained herein shall be construed to apply to any work, employment or operations done, had or conducted by farmers and others engaged in farming, tillage of the soil, or stock raising, or to those who rent, demise or lease land for any of such purposes, or to anyone in their employ, or to any work done on a farm or country place, no matter what kind of work or service is being done or rendered."

The question as to the proper construction of this proviso was before our Supreme Court in two cases, to wit: *Hill* vs. *Ind. Com.*, 346 Ill. 392, and *Noverio* vs. *Ind. Com.*, 348 Ill. 137.

In the Hill case, the employee was working for a farmer by the name of Weber who bought a threshing machine and engaged in threshing grain for his neighbors as well as himself, and afterwards attached a clover-hulling device to the separator and agreed to hull clover for some of his neighbors.

Hill assisted in running the threshing machine and operated the separator while hulling clover. While engaged in such work on the farm of a neighbor, Hill was kicked by a horse and sustained injuries for which he claimed compensation. The employer contended that the work in which they were then engaged was work on a farm within the meaning of the above proviso, and that the injuries sustained by the claimant therefore were not compensable.

In considering such contention the court, on page 396, said:

"By the usual rule of construction the words 'any work done on a farm or country place' must be limited by the context of the Act to mean work which is in its nature a part of farming. It cannot be said that plaintiff in error, while hulling clover for another for hire, was a farmer engaged in farming, tillage of the soil, or stock raising, renting, demising or leasing land for any such purpose on his own behalf, and if this were the extent of the exemption we would be constrained to agree with the contention of defendant in error that the operations here were under the Act. The exemption, however, goes further and applies to any work done on a farm or country place, no matter what kind of work is being done or rendered. Even limiting this language to work which is in its nature farm work, it is apparent that the legislature intended to exclude from the operation of the Act not only the employer and employee who are engaged in general farming operations for such employer but who are doing any farm work on a farm or country place."

In the Noverio case, Noverio undertook a patch tile job on a farm, and was struck in the eye by a piece of metal while he was working at the home of his employer at some considerable distance from the farm in question, making screens to cover the tile outlet.

It was contended on the part of the employee that he was under the Compensation Act by reason of the fact that sharp-edged cutting tools were used in the doing of the work. The employer took the position that the work being done was "work on a farm," within the aforementioned proviso. In disposing of the question there raised, the court, on page 139, said:

"Without regard to the question as to whether Corsini's business could be held to involve excavating or the use of sharp-edged cutting tools within the contemplation of the statute, it clearly was in its nature farm work. No work could be more fundamentally a part of farming than drainage to put the soil in shape for cultivation. That it was being done by one not engaged in general farming himself is immaterial. It is true that the portion of the operation in which the injury actually occurred does not appear to have been performed within the physical boundaries of the particular farm

for which the tiling was being done, nor is it definitely shown to have been done on soil in the nature of a farm or country place as distinguished from other types of realty. Such, however, is not here a material consideration. The adjournment to Corsini's basement was obviously to facilitate the completion of an integral part of the drainage system that was in process of installation on the farm and the character of the work was in no sense altered thereby."

The only facts in the record relative to the work being done by claimant at the time of his injury are, in substance, that he was ''husking corn by hand at the DeKalb Experimental Field which is operated for experimental and educational purposes by the University of Illinois.'' As we view the matter, that constitutes work on a farm, within the meaning of the proviso in Paragraph 8 of Section 3 of the Act.

The suggestion is made that claimant is entitled to an award on the grounds of equity and good conscience. Similar contentions have heretofore been made in numerous other cases before this court, but it is now well settled that the Court of Claims Act of this State merely provides a forum in which claims against the State may be heard; that such Act does not create any new liability against the State, or increase or enlarge any existing liability; that the authority of this court to allow awards is limited to claims in which the claimant would be entitled to redress against the State, either at law or in equity, if the State were suable; that unless the claimant can bring himself within the provisions of a law giving him the right to an award, he cannot invoke the doctrine of equity and good conscience to secure such award. *Crabtree* vs. *State,* 7 C. C. R. 207; *Titone* vs. *State,* 9 C. C. R. 389; *Garbutt* vs. *State,* decided at the September Term, 1937; *Bishop* vs. *State,* decided at the November Term, 1938.

This case appeals very strongly to the sympathies of the court, but we do not make the law and can only interpret it as we find it. This court has only such jurisdiction as is conferred by legislative enactment, and much as we would like to enter an award herein, we have no authority to do so under existing laws and the record before us.

Award must therefore be denied and the case dismissed.