## GEORGE SCORDIS'S CASE.

Suffolk. October 5, 23, 1939. — January 30, 1940.

Present: FIELD, C.J., LUMMUS, QUA, DOLAN, & COX, JJ.

*Workmen's Compensation Act*, To whom act applies. *Contract*, Of employment.

A recipient of relief granted him by a city under G. L. (Ter. Ed.) c. 117, § 14, in the amended form appearing in St. 1937, c. 113, while at work required of him by the city under that statute, was not an employee of the city under any contract of hire and therefore was not its employee within the definition in § 1 (4) of the workmen's compensation act, G. L. (Ter. Ed.) c. 152, in the form appearing in St. 1935, c. 406, although he was under the direction and control of a duly authorized representative of the city and the work he was doing was of economic value to the city.

CERTIFICATION to the Superior Court of a decision by the Industrial Accident Board awarding compensation.

A decree in accordance with the board's decision was entered by order of *Walsh*, J.

*G. Gleason*, (*P. S. Ratzkoff* with him,) for the insurer.

*V. H. Eskenas*, for the claimant.

*H. Parkman, Jr.*, *R. H. Hopkins* & *J. P. Graham*, and *G. W. Cox*, by leave of court, submitted briefs as *amici curiae*.

DOLAN, J. This workmen's compensation case comes before us on the appeal of the insurer from a decree of the Superior Court awarding compensation in accordance with the decision of the Industrial Accident Board. After the entry of the appeal in this court, the workman involved

having died on June 16, 1939, the public* administrator of his estate was permitted on motion to intervene. The insurer concedes that the workman's death resulted from the injuries hereinafter referred to. The sole issue for determination is whether the deceased was an employee of the city of Woburn within the meaning of G. L. (Ter. Ed.) c. 152, § 1 (4), as last amended by St. 1935, c. 406.

The findings of the single member of the board and his decision were adopted and affirmed by the reviewing board. The findings are in substance as follows: The deceased applied to the city of Woburn for "welfare" and was granted relief "to the value of $8.20 per week." This amount was based upon the number of persons in his family. In return for the "welfare" he was obliged to work at thirty-five cents per hour for the number of hours each week "that would be equivalent at thirty-five cents per hour to the amount he received as welfare." The city compelled all able-bodied men receiving welfare to work in a similar manner. There was testimony "that in the event a welfare recipient refused to work 'we get a complaint for nonsupport.'" The deceased had worked for a number of weeks on different types of work. He was injured while working on an ash truck on April 11, 1938, (inadvertently stated in the findings as April 10, 1938,) and sustained a fracture of the right femur.

The single member further found that the deceased was an employee of the city of Woburn "under a contract of hire," that his injury arose out of and in the course of his employment, that he was totally disabled thereby down to the date of the filing of the decision of the single member (January 6, 1939), that his wages were $8.20 a week, and ordered compensation to be paid at that rate "per week from April 10 [sic] 1938 to the date of the filing of this decision," and that the insurer continue to make payments "in accordance with the terms of the Act." These findings were made "upon all the evidence," which discloses the following additional material facts: The welfare to the value of $8.20 that the deceased was receiving was given in the

---

* The employee had testified before the single member that he had lived in Woburn almost five years and that he lived with his wife and child.

following form: "$3.60 a week in groceries, $1.50 a week fuel, necessary clothing when the board deemed it necessary, milk, rent $3.00 a week paid to the landlord. . . . the grocery, milk and fuel allowance was in cash and paid directly to . . . [the deceased]. . . . The amount given a family depends on the size of said family. It did not depend on the amount of work the man did. That had nothing to do with it. That was an after event and if he was sick and unable to work the welfare aid would go on just the same." When the deceased worked two days a week he received the same welfare as when he worked three days a week. Since the city has "picked up the ashes in 1932 or 1933 it has always been picked up by welfare help." One Spencer, who is in the employ of the city, "drives the ash truck."

The following stipulation was filed in the case: "In the above case, it is hereby stipulated and agreed that Scordis, at the time of the accident in question had a lawful settlement, (G. L. c. 117, § 14, as amended) in the town of Danvers; that prior to his accident and following his application for relief, the city of Woburn notified the town of Danvers that the said Scordis had applied for relief, which had been granted, and it further requested the town to remove the said Scordis or otherwise the city of Woburn would be obliged to aid him and charge the town of Danvers for this aid. Following this notice, the town of Danvers acknowledged that the settlement was in the town of Danvers and later paid to the city of Woburn the amount which the city had expended for the relief of Scordis and his family, up to June 30, 1938."

We are of opinion that the finding that the deceased was an employee of the city at the time of his injury under a contract of hire was not warranted on the evidence.

The relief and support was granted to the deceased under G. L. (Ter. Ed.) c. 117, § 14, as amended by St. 1937, c. 113, (see now St. 1938, c. 275; St. 1939, c. 39) wherein it is provided that "Boards of public welfare in their respective towns shall provide for the immediate comfort and relief of all persons residing or found therein,

having lawful settlements in other towns, in distress and standing in need of immediate relief, until removed to the towns of their lawful settlements. Any such board may require persons receiving such relief to work in return therefor in the infirmary, or in such other manner as the town directs, or otherwise at the discretion of the board. The expense of such relief and of their removal, or burial in case of their decease, may be recovered in contract against the town liable therefor, if commenced within two years after the cause of action arises; but nothing shall be recovered for relief furnished more than three months prior to notice thereof given to the defendant." This statute, which is made applicable by G. L. (Ter. Ed.) c. 4, § 7, to cities, imposes a duty upon boards or departments of public welfare. It is true that until the enactment of St. 1937, c. 113, the prior statutes relative to the relief of those within a city or town who had no settlement therein contained no provision that such persons receiving relief could be required to work "in return therefor." But under the statute as thus amended the provision is substantially the same as that which for many years (St. 1793, c. 59, § 2) had been in force relating to relief and support required to be granted to poor and indigent persons settled in a town "whenever they stand in need thereof," G. L. (Ter. Ed.) c. 117, § 1, and as to whom it is provided in § 2 that in the care and oversight of such persons the board of public welfare shall see "that they are suitably relieved, supported and employed in the infirmary, or in such other manner as the town directs, or otherwise at the discretion of the board." Thus it appears that by St. 1937, c. 113, the same obligation was imposed upon those within a municipality, but without settlements therein, to work in return for relief granted under the governing statutes, as had long been the obligation of those having settlements who received relief and support from a municipality under c. 117.

Under the terms of G. L. (Ter. Ed.) c. 152, § 1 (4) (the workmen's compensation act), an employee is defined, with exceptions not here material, as "every person in the serv-

ice of another under any contract of hire, express or implied, oral or written." It is of the essence of a contract that it should be voluntary on the part of the contracting parties. See *Greene's Case*, 280 Mass. 506. In the present case the relief given the deceased by the city was granted by virtue of an obligation placed upon it by legislative mandate. The service exacted in return was under legislative sanction. In these circumstances we are of opinion that the deceased was not an employee of the city under any contract of hire, "express or implied, oral or written," within the meaning of the workmen's compensation act.

The counsel for the legal representative of the deceased has urged, however, that since the cash and supplies were furnished to the deceased by the city and he was under the direction and control of the duly authorized representatives of the city at the time of his injury, he was an employee of the city, citing in support of this contention *Gates's Case*, 297 Mass. 178, 181, where, after stating the definition of an employee under c. 152, § 1 (4), the court said: "The test to determine whether the E. R. A. or the town of Princeton was the employer of the deceased at the time of his injury is the answer to the questions, Who had the direction and control of the deceased and to whom did he owe obedience in respect to his employment?" But even if in some circumstances evidence of direction and control might in itself be sufficient to warrant a finding of a contract to hire (see *Donnelly's Case*, 304 Mass. 514, 519) the underlying and fundamental test still remains whether the workman when injured was in the service of another under a contract of hire, express or implied, oral or written (see *McDermott's Case*, 283 Mass. 74), and not only the circumstances of direction and control must be considered in the determination of that question, but also all the other attendant circumstances. Where, as here, the other attendant circumstances are that the deceased was given relief and support by legislative mandate, and that the service performed in return therefor was exacted under legislative authority, the evidence of direction and control of the workman is not sufficient of itself to warrant a finding

that he was an employee of the city within the meaning of c. 152, § 1 (4), but on the contrary we think that in all the circumstances it must be found that he was not such an employee of the city.

In *Commonwealth* v. *Pouliot,* 292 Mass. 229, at pages 231–232, the court said: "The obligation of a husband and father to maintain his family, if in any way able to do so, is one of the primary responsibilities established by human nature and by civilized society. The statute enforces this duty by appropriate sanctions. A reasonable opportunity is afforded to the defendant by the city to provide for the support of his wife and children. The statutes require that support at the public expense be provided for the poor and indigent residing or found in the several towns. G. L. (Ter. Ed.) c. 117, §§ 1, 2, 14, 17, 18." See also *Wilson* v. *Brooks,* 14 Pick. 341, 343; *Marlborough* v. *Lowell,* 298 Mass. 271, 273.

The obligation to relieve and support the poor and indigent is mandatory even in cases where the one relieved is unable to work in return for the relief granted. See *Commonwealth* v. *Pouliot,* 292 Mass. 229; and *McBurney* v. *Industrial Accident Commission,* 220 Cal. 124, a case closely resembling in its facts the present case. In the latter case, at page 127, the court said: "The petitioner had the right to invoke the relief granted and under the circumstances here shown the county could not deny it. The transaction thus far is in the field of public welfare, and the essential characteristics of a contract of hire are not present." While it does not appear that the statutes governing this case contained provisions for the employment of the poor and indigent, as in the present case, the court held that the county was "entitled to . . . [the] services and earnings [of the workman] to aid in his support," and that a contract of hire did not exist at the time of the injury of the workman under workmen's compensation laws. A number of cases to the same effect are there cited.

Counsel for the representative of the estate of the deceased has also relied upon the cases of *Porton* v. *Central*

(*Unemployed*) *Body for London*, [1909] 1 K. B. 173, *Gilroy* v. *Mackie*, 46 Sc. L. R. 325, *Industrial Commission* v. *McWhorter*, 129 Ohio St. 40, *Waycross* v. *Hayes*, 48 Ga. App. 317, *Bernstein* v. *Beth Israel Hospital*, 236 N. Y. 268, *Hall* v. *Salvation Army*, 236 App. Div. (N. Y.) 199, and *Forest Preserve District* v. *Industrial Commission*, 357 Ill. 389. An examination of these cases discloses that nothing is said in any of them that is in conflict with what we have said here, except possibly in the cases of *Industrial Commission* v. *McWhorter*, 129 Ohio St. 40, and *Waycross* v. *Hayes*, 48 Ga. App. 317. In so far as these cases are in conflict with the conclusion we have here reached we do not follow them. The case of *Gilroy* v. *Mackie*, 46 Sc. L. R. 325, follows the case of *Porton* v. *Central* (*Unemployed*) *Body for London*, [1909] 1 K. B. 173, and in the course of the opinion the court concedes that in the relations that exist between poor law authorities and a pauper or between prison authorities and a prisoner there is "entirely wanting that freedom of contract on both sides which is of the essence of employment as we are using the term . . . in the sense of the Act [workmen's compensation act] before us" (page 327). In that case the relief was granted not under the poor laws but under the Unemployed Workmen Act 1905, and in a concurring opinion, at page 328, Lord Pearson said: "It is true that in a certain sense the relief given (for it is relief) is charitable. But the very purpose of the scheme of distress committees is to take off the appearance of charity by substituting the providing of work to be paid for, exactly as work under an ordinary contract is paid for." See also *Watson* v. *Government Instructional Centre*, 97 L. J. K. B. (N. S.) 596. The cases of *Bernstein* v. *Beth Israel Hospital*, 236 N. Y. 268, and *Hall* v. *Salvation Army*, 236 App. Div. (N. Y.) 199, are not in point, since they are not concerned with any question relating to relief granted under poor laws. In the case of *Forest Preserve District* v. *Industrial Commission*, 357 Ill. 389, the relief granted does not appear to have been given under such provisions of statute as those with which we are here concerned. It has been urged that the services rendered

by the deceased to the city were of value to it.   Granting that the services of the deceased were of economic value to the city, that does not alter the case.   See *Watson* v. *Government Instructional Centre*, 97 L. J. K. B. (N. S.) 596.

The result we have reached is supported in principle by such cases as *Vaivida* v. *Grand Rapids*, 264 Mich. 204, followed in *Davenport* v. *Detroit*, 268 Mich. 374, and in *Oleksik* v. *Detroit*, 268 Mich. 697 (a case much like the present case in its facts, except that there, and in the cases it follows and also in other cases, the result was reached without the aid of any statute requiring work by recipients of poor relief who were able to work), and by *McBurney* v. *Industrial Accident Commission*, 220 Cal. 124, *In re Moore*, 97 Ind. App. 492, *Lawe* v. *Department of Labor & Industries*, 189 Wash. 650, *Watson* v. *Government Instructional Centre*, 97 L. J. K. B. (N. S.) 596, *Gilroy* v. *Mackie*, 46 Sc. L. R. 325, *Tozeland* v. *Guardians of the Poor of the West Ham Union*, [1907] 1 K. B. 920, and *Hattler* v. *Wayne County*, 320 Penn. St. 280, 282, 287.   Running through these cases is to be found a recognition of the basic principle that under workmen's compensation acts where the term employee is defined substantially as in our act (G. L. [Ter. Ed.] c. 152, § 1 [4]) a contractual relationship is necessary between the one who serves and the one served, and also of the principle that no such relationship exists where the work is rendered in return for relief and support granted to the poor and indigent under the poor laws, and this even in jurisdictions where the granting of such relief and support, as here, is mandatory, but where no provisions of statute such as ours authorize the employment of those so relieved.

The decree entered in the Superior Court is reversed and instead a decree is to be entered dismissing the claim.

*So ordered.*