[No. 27982. Department Two. October 22, 1940.]

ROBERT HECKMAN *et al., Respondents,* v. SISTERS OF CHARITY OF THE HOUSE OF PROVIDENCE IN THE TERRITORY OF WASHINGTON, *Appellant.*[1]

[1]Reported in 106 P. (2d) 593.

700

*J. Speed Smith* and *Henry Elliott, Jr.,* for appellant.
*Oscar A. Zabel* and *W. L. Gibbon,* for respondents.

BEALS, J.—Robert and Almeda Heckman, husband and wife, instituted this action against Sisters of Charity of the House of Providence in the Territory of Washington, a corporation, for the purpose of recovering damages on account of an injury suffered by Mrs. Heckman during the month of September, 1937, when she fell on a sidewalk located on defendant's property and leading from Seventeenth avenue, in the city of Seattle, to the lower entrance of Providence hospital, the building owned and operated by defendant for the purpose of caring for the sick and infirm. In their complaint, plaintiffs pleaded facts which they contend entitle them to recover judgment against defendant, the material allegations of which were denied

by defendant in its answer. The action was tried to a jury, which returned a verdict in plaintiffs' favor in the sum of $2,500. From a judgment entered upon this verdict, defendant has appealed.

Error is assigned upon the denial of appellant's challenge to the sufficiency of the evidence; upon the overruling of its motion to dismiss the action; and upon the denial of appellant's motion for judgment in its favor notwithstanding the verdict, or in the alternative for a new trial. Appellant also complains of several instructions given by the court, to which it excepted, and of the refusal of the court to give certain instructions which appellant requested. These assignments of error will be discussed in two groups: First, those by which appellant contends that the judgment is not supported by the evidence; and second, those in connection with the giving and refusing of instructions.

Respondent Almeda Heckman will be referred to in this opinion as though she were the sole respondent.

It was stipulated that appellant is a charitable corporation, and that Providence hospital, which for many years has been conducted by appellant in the city of Seattle, is a charitable institution, within the meaning of the laws of this state.

In connection with the work of this hospital, appellant has for some years maintained a school of nursing, conducting the courses of study in connection with the University of Washington, and appellant has provided board and lodging, during their course of study, to young women who were studying to become graduate nurses. It was appellant's custom to hold, twice a year, a ceremony at which student nurses attending the University of Washington, who had elected to take their hospital training either at Providence hospital or Harborview hospital, in the city of Seattle, should receive

their caps. These students continued in attendance at the university, while obtaining practical training at the hospitals mentioned.

It was proposed to hold one of these capping ceremonies at eight o'clock on the evening of September 26, 1937, Miss Betty McCormick being one of the students who was to receive her cap on that occasion. Each candidate for a cap was permitted to invite relatives and friends to the ceremony, and Miss McCormick invited respondent, a friend of long standing, to attend.

Appellant owns an entire block between Seventeenth and Eighteenth avenues, in the city of Seattle, the main entrance to the hospital building being from Seventeenth avenue. The auditorium is not part of the hospital building, but is in a wing of the building occupied by the nurses, the entrances to the auditorium being on Eighteenth avenue. It was in this auditorium that the capping ceremony was to be held.

On the evening in question, respondent went to the hospital, but not knowing just where the ceremony was to be held, entered the grounds from Seventeenth avenue. The main entrance to the hospital is approached by a flight of steps, the vehicle entrance being on the ground level. The driveway for vehicles curves and rises slightly as it approaches the entrance. A sidewalk which passes the steps to the main entrance leads to this driveway and, at the point where it reaches the curb of the driveway, is a little higher than the driveway surface, one inch higher at the right-hand side of a pedestrian approaching the driveway, and two and one-half inches higher at the left. Pedestrians entering the hospital on the ground floor follow the curving walk, cross the driveway inclining to the right, and so enter the hospital. Respondent followed this sidewalk and, when she reached the step down on to the driveway, did not notice that the driveway was on a

slightly lower level than the sidewalk, and in stepping from the sidewalk, because of the difference in elevation, stepped down and fell, suffering the injury of which she complains.

The way followed by respondent in entering the hospital is used by many persons, the walk is perfectly level, and if a pedestrian is aware of the slight difference in grade between the driveway and the walk, no dangerous situation is presented.

Directly above the entrance, and a little to the right of the end of the walk at the driveway, is an electric light, consisting of four fifty-watt lamps, which light is turned on each day as darkness approaches. At the time respondent fell, it was dark, and respondent testified positively that the light was not turned on. Appellant frankly admits that, under the evidence, the jury could find that the electric light was not turned on. The site of the accident would be rendered darker by the fact that the hospital building loomed up directly in front of respondent, while the abutment of the flight of steps leading to the main entrance to the hospital would tend to cut off any light which might have come from respondent's right.

In conducting its courses for the training of nurses, appellant was carrying out its general charitable purposes, this branch of its operations being within its proper and necessary functions in the conduct of its hospital. Respondent entered upon appellant's property as an invited guest of Miss McCormick, who was authorized by appellant's agents in charge of the evening's exercises to invite her friends. Appellant argues that, in accepting this invitation, respondent became a beneficiary of the charitable work conducted by appellant, citing *Glaser v. Congregation Kehillath Israel*, 263 Mass. 435, 161 N. E. 619; *Bianchi*

*v. South Park Presbyterian Church,* 123 N. J. L. 325, 8 Atl. (2d) 567; and *Bodenheimer v. Confederate Memorial Ass'n,* 68 F. (2d) 507. Appellant then argues that, as under our decisions following the majority rule, a charitable institution such as appellant is not liable for the negligence of its employees, if it has exercised reasonable care in their selection and retention (*Bise v. St. Luke's Hospital,* 181 Wash. 269, 43 P. (2d) 4), respondent is not entitled to recover herein, as no negligence on the part of appellant in selecting or retaining any employee was pleaded or proven.

We cannot follow appellant's argument on this phase of the case. We are not inclined to extend the doctrine that a paying patient in a hospital maintained by a charitable organization may recover for injuries suffered only if the hospital was guilty of negligence in the selection or retention of one of its staff or employees. Respondent was neither seeking nor receiving any benefit which could be classed as charitable. In 13 R. C. L. 948, § 12, is found the following:

· "Liability to Strangers and Others Not Patients.— The theories of the immunity of a hospital from liability on the ground of public policy and on the ground that the assets are a trust fund having been very generally rejected by the courts, and the doctrine of waiver by acceptance of benefits being applicable only to patients, the law has come to be that as to others not the recipient of the institution's charity the rule of responsibility for the negligence of its servants and agents is applied as in cases of the ordinary business corporation. Thus, recovery has been had in favor of a stranger injured by reason of the unsafe condition of hospital premises, or by an employee's mechanic working on the hospital premises, or by one injured by the careless driving of a hospital's servant, or by an apprentice nurse put in charge of a patient suffering with a contagious disease, without warning, whereby she contracted it. Proof of due care in the selection of its agents will not, it has been held, exonerate a hos-

pital in a case where the relation of patient does not exist and the hospital would otherwise be liable."

In so far as authorities cited by appellant support its argument on this phase of the case, we decline to follow them.

■ Appellant next argues that respondent was a gratuitous licensee, and not an invitee, a licensee having been defined as

"A person who is privileged to enter or remain upon land by virtue of the possessor's consent, whether given by invitation or permission." 2 Restatement of the Law of Torts, 893, § 330.

In this connection, appellant relies upon authorities which support the rule that a mere licensee may recover only for wanton or willful injury.

The training of nurses by appellant constituted an important part of its work. Much attention was paid to this part of its operations, and appellant trained its nurses at considerable expense, receiving, of course, services in return. It is a matter of importance to hospitals to always have available a sufficient number of intelligent young women of high character, who are well trained and competent nurses. In order to attract desirable candidates for the profession of nursing, the course of study and practice is naturally made as pleasant and interesting as the arduous work required will permit. The holding of a capping ceremony and the recognition thereby of the fact that certain young women have successfully attained a certain grade in their course, is one method of showing appreciation by a hospital of the efforts, on the part of those who are to receive their caps, to successfully accomplish completion of the course of training. We are of the opinion that, in holding this ceremony, and in informing the young women who were to be honored on that occa-

sion that they could invite their friends to attend the exercises, the hospital assumed towards persons who were so invited the relationship of an invitor, and that respondent was not a mere licensee, but on the occasion of the accident was appellant's invitee. *Holm v. Investment & Securities Co.,* 195 Wash. 52, 79 P. (2d) 708. As to appellant's responsibility to an invitee, see *Cohen v. General Hospital Soc.,* 113 Conn. 188, 154 Atl. 435; *Sisters of Charity v. Duvelius,* 123 Ohio St. 52, 173 N. E. 737; *McLeod v. St. Thomas Hospital,* 170 Tenn. 423, 95 S. W. (2d) 917.

■ Appellant next contends that respondent exceeded the bounds of her permission to enter upon appellant's premises, because she sought to enter the main hospital building, rather than the auditorium. It does not appear that respondent received a written invitation which gave her information as to the exact location of the auditorium where the exercises would be held, or that she was informed that the entrance to the auditorium was on Eighteenth avenue. Respondent was invited to attend the capping, to be held in the auditorium. In the absence of specific information on her part as to the location of the particular building in which the ceremony was to be held, it was perfectly natural for respondent to enter the hospital by its main entrance, and then ask for directions as to the place where the capping would take place. In this connection, appellant cites the case of *Kinsman v. Barton & Co.,* 141 Wash. 311, 251 Pac. 563, in which a recovery was denied to one injured by stepping into an unguarded hole in a garage floor. It was held that the person injured was a mere licensee, and was not entitled to recover. As in our opinion respondent was an invitee, a different rule as to appellant's responsibility applies.

■ As to appellant's negligence, appellant cites the

case of *Knopp v. Kemp & Hebert,* 193 Wash. 160, 74 P. (2d) 924, in which it was held that no negligence on the part of a storekeeper was shown because of the condition of the floor of an arcade, which was slightly sloping, and which was wet. The alleged negligence on the part of the storekeeper consisted of the fact that the floor was much smoother than the adjoining sidewalk, and when wet was slippery. This case does not support appellant's argument.

In the case of *Tyler v. Woolworth Co.,* 181 Wash. 125, 41 P. (2d) 1093, a judgment against a storekeeper in favor of a customer, who had fallen because of a step at the end of a ramp by which she was leaving the store, was affirmed. In the course of the opinion, we said:

"In the storeroom cases, this court has denied recovery where the stairway was in plain view of the injured person and, if such person had exercised reasonable care, he would have seen it. On the other hand, it has permitted recovery where the stairway was 'dangerously located or was unprotected or was poorly lighted, or tended to form a trap.' . . .

"If the step is properly constructed, but poorly lighted, and by reason of this fact one entering the store sustains an injury, recovery may be had. On the other hand, if the step is properly constructed and well lighted, so that it can be seen by one entering or leaving the store, by the exercise of reasonable care, then there is no liability."

In the case last cited, many of our previous decisions are referred to.

We are convinced that upon the question of negligence, the trial court did not err in submitting the case to the jury, and correctly ruled that appellant was not entitled to judgment in its favor as matter of law.

We shall now consider appellant's claims of error in connection with instructions given or refused.

708

From testimony introduced by appellant, it appears that appellant's agents and employees recognized their duty to see that the light at the entrance from the driveway was turned on at the approach of darkness. One of appellant's witnesses testified that it was the duty of the elevator boy to turn on the light, and "if he doesn't do it, we always watch. We have been very strict about that." The witness also testified that, if the elevator boy did not turn on the light, "we sometimes do or remind him to do it."

The trial court instructed the jury that, if they found from the evidence that, at the time of the accident, the step from the entrance sidewalk down to the driveway was obscured by the darkness and lack of sufficient light to illuminate the place, and that the situation constituted a danger, "and that the defendant knew or should have known by reasonable inspection that said condition existed, but failed to remedy the same," then such failure would constitute negligence, and that if, as a proximate result thereof, respondent was injured, she could recover, unless the jury found that respondent was guilty of contributory negligence.

The court also gave instruction No. 12, as follows:

"The law imposes a duty upon a hospital to make and maintain a reasonable inspection of its premises and all parts thereof which are open to invitees therein for their use. This duty of inspection is a component part of the duty imposed by law upon a hospital to maintain its premises in a reasonably safe condition. If a hospital fails to make and maintain a reasonable inspection of its premises, and as a result of such failure an invitee is permitted to use a portion or portions thereof that are unsafe or dangerous when not adequately illuminated so that one lawfully using such premises would be unaware of such condition because of the lack of reasonable light to disclose or reveal said condition, and said invitee is injured as the proximate result thereof, then the defendant hospital is

guilty of negligence, and such injured person would under the law be entitled to recover for any injuries sustained as are naturally a proximate result of the hospital's negligence."

Appellant also excepted to instruction No. 13, in which the court told the jury that, if respondent, in approaching the hospital, believed that she was using the proper means of entrance thereto, and was an invitee, she might recover, even though the means of entrance she was using was not in fact the method provided for entrance to the auditorium.

Appellant excepted to these instructions, and now argues that the giving thereof constitutes reversible error, requiring a new trial. Respondent did not plead any failure on the part of appellant to inspect the driveway or the condition of the light, the evidence simply warranting a finding by the jury that, at the time of the accident, the light was not turned on, and that, in the absence of artificial light, the place at the time of the accident was dangerous. The record contains no evidence that, on the evening in question, the light had been turned on, nor is it shown that any officer or employee of appellant had any knowledge as to whether the light was on or off, on the evening in question, prior to the accident. Appellant argues that, under the instructions, the jury may have believed that the duty rested upon appellant to make a continuous inspection of the light, it being also contended that, under instruction No. 12, a licensee might recover, as well as an invitee.

The instructions are not subject to the objections urged by appellant. It cannot be held that the trial court thereby placed upon appellant the burden of making and maintaining a continuous inspection of its premises. Neither could the jury have been misled into believing that, by the use of the words "one law-

fully using such premises" almost immediately following the word "invitee," in instruction No. 12, a mere licensee would be permitted to recover under the rule laid down in that instruction. The instructions of which appellant complains contain no reversible error. The court's instructions are contained in the transcript, and an examination thereof convinces us that the trial court properly advised the jury as to the law applicable to the questions which the jury was to determine.

We find no error in the failure of the trial court to give the instructions requested by appellant, on the refusal to give which it assigns error. The court properly instructed the jury upon the matters covered by these requested instructions.

Finding no error in the record, the judgment appealed from is affirmed.

BLAKE, C. J., STEINERT, DRIVER, and JEFFERS, JJ., concur.