[1] Reported in 135 P.2d 852.
This is an appeal by defendant, Young Women's Christian Association, a corporation, hereinafter referred to as YWCA, from an order granting the motion for new trial of plaintiffs, Weldon Kalinowski and Ernestine Kalinowski, after a jury verdict in favor of defendant. The order was granted on the following ground:
"It is hereby ordered that said motion for new trial be and the same is hereby granted specifically for the reason that neither the issue of invitee or licensee was a proper one to be submitted to the jury in this case."
Ernestine Kalinowski and her husband brought this action against the YWCA to recover for an alleged injury sustained by Mrs. Kalinowski, who will hereafter be referred to as if she were the sole plaintiff. The amended complaint in substance alleged that plaintiff was invited by the YWCA secretary of the Girl Reserves, an organization organized and sponsored by the defendant, to be advisor of a Girl Reserves unit of John Rogers high school; that the unit gave a dance on April 18, 1941, and plaintiff reported to defendant and assumed charge of the dance, which was held in defendant's building. It is further alleged that defendant's employees had carelessly and negligently placed dance wax upon the floor in excessive amounts, with the result that a quantity of the wax accumulated upon the soles and heels of plaintiff's shoes as she walked upon the dance floor; that defendant knew that the excessive quantity of wax which had been placed upon the floor would accumulate upon the shoes of persons using the dance floor, and accordingly had *Page 383 
placed a short rubber mat on the floor of the main lobby leading from the entrance to the gymnasium.
It is alleged that it became necessary for plaintiff to leave the dance floor and pass through the main lobby; that, in doing so, she stepped upon the rubber mat, then off the mat onto the linoleum which covered the floor of the lobby; that, because of the accumulation of wax on her shoes, when she stepped onto the linoleum her feet slid in opposite directions, and in an endeavor to recover her balance and avoid falling, she sprained her back severely in the sacro-iliac joint and in the region of the sacrum.
In its answer, defendant, in addition to denying that plaintiff suffered any injury due to the negligence of defendant; alleged contributory negligence on the part of plaintiff, and also that defendant was a charitable corporation and did not charge for or receive any money from the dance.
The evidence in most respects is not in conflict. The Girl Reserves is an organization sponsored by the YWCA to aid in the development of adolescent girls, or high school girls from twelve to eighteen years of age. By becoming a member of the Girl Reserves, a girl becomes a junior member of the YWCA.
Plaintiff was a teacher at John Rogers high school, and had become advisor for a Girl Reserves unit of that school in October, 1940, at the request of Mrs. Taggart, the paid Girl Reserves secretary of the YWCA. Plaintiff received no salary for the services rendered by her to the Reserves, and her duties consisted largely of meeting with the girls once a week at the school and assisting them in formulating and carrying out their program. Once a month the officers of the various Girl Reserves units of the city met with Mrs. Taggart at the YWCA building, and at one of these meetings *Page 384 
the officers of the John Rogers high school group expressed a desire to have a dance.
Plans for a dance were begun, and the matter was discussed between plaintiff and Mrs. Taggart, especially the matter of a date on which to hold the dance. Mrs. Taggart finally decided on April 18, 1941. While Mrs. Taggart did not state that she expressly invited plaintiff to attend this dance, she did testify that it was unnecessary so to do, as all advisors knew that they were expected to help with the programs of their respective groups. She further testified that plaintiff had agreed to assist in decorating the gymnasium for the dance. Plaintiff testified that Mrs. Taggart asked her to come early that night, as she (Mrs. Taggart) might be delayed.
The dance, while originally planned by the Girl Reserves of John Rogers high school, was attended by other high school and junior high school students. Tickets to the dance were sold for fifteen cents per person, two for twenty-five cents. Defendant made no charge for the use of the gymnasium for the dance, and the money collected for admission was used to supply nickels for the nickelodeon, which furnished the music, and to pay the janitor, none of the money going to defendant.
The gymnasium had a hardwood floor, which was sixty feet wide and seventy-four feet long. Before the dance, the floor had been prepared by an employee of defendant, by the application of a mixture of nine pounds of corn meal and one cup of "Misto," which is a preparation of the Acme Chemical Company. One third of this mixture was placed on the floor prior to the dance. There was only one entrance to the gymnasium, a door which opened onto the main lobby. At this door, a rubber mat, four feet wide by seven feet four inches long had been placed, for the purpose, *Page 385 
as testified by Mrs. Foster, maintenance secretary of defendant, of preventing the tracking of the corn meal mixture throughout the building. In the lobby, on the left side of the door as one walked toward the gymnasium, was a small table used by persons collecting tickets. The floor of the lobby, coming from the gymnasium, was covered with linoleum.
On the evening of the dance, plaintiff wore shoes with heels about two inches high, and during the evening she danced several times with the students. She testified that during the evening she was aware of an accumulation on the soles and heels of her shoes of some substance which she thought was wax, but that she did not examine her shoes that night, nor until the next morning, when she discovered that the heels of her shoes were covered with a substance which looked like wax.
Plaintiff left the gymnasium several times during the evening, crossed the rubber mat, and turned to the left in the lobby, to the cashier's desk to get change for the nickelodeon. There is no allegation or claim that the mat or the linoleum was defective, or that plaintiff tripped on the mat or the linoleum. On one occasion, as plaintiff left the dance hall, just as she stepped from the rubber mat onto the linoleum her foot or feet slipped and she did what she described as the "splits." She did not fall clear to the floor, nor did her hands touch the floor, but in recovering her balance, she received the injury for which damages are claimed.
Plaintiff further testified that she had danced a great deal, and knew that wax was usually put on dance floors to make them slippery. We call attention to the cross-examination of plaintiff:
"Q. Now, you recall, do you not, while you were dancing there you noticed that some substance had accumulated *Page 386 
on the soles and heels of your shoes, do you not? A. Why, yes, you always know there is wax on your shoes when you are dancing. Q. So, you were aware of that substance that you thought was wax on the sole and heel of your shoe while you were dancing there that evening, were you not? A. Well, I don't believe that one can dance on a waxed floor and not get wax on your shoes. Q. I am asking if you weren't aware you did have it on your shoes? A. Why, yes, I would expect it to be there . . . Q. There isn't any question, then, now, that you knew there was a substance on your shoes at the night of the dance? A. Well, I knew there was wax on my shoes, yes."
One of the witnesses called by plaintiff was LeNoir Simenton, a student at John Rogers high school, who testified to seeing plaintiff slip, and to the slippery condition of the floor at or near the place where plaintiff slipped. She further testified that she had attended a dance in the gymnasium in February, 1941, and on that occasion she had slipped at a point near where plaintiff had slipped; that she had seen another girl slip there; and that, on the evening of April 18th, after plaintiff's accident, the witness again slipped.
Defendant called, among other witnesses, L.H. Moore, salesman for Acme Chemical Company, who testified that the preparation used by the YWCA on the floor was used by one fourth of the high schools in the state, as well as by Washington State College and the University of Idaho; that Misto takes a portion of the wear off the floor, controls dust, and aids in cleaning; that Misto does not make the floor slippery, that condition being caused by the corn meal; and that the purpose of Misto is to overcome the dust which is caused by the corn meal, and the grating noise the corn meal makes, and also to aid in removing it.
Defendant also called Alfred W. Perry, who for many years has had charge of preparing the dance floor at Washington State College for dances, and who *Page 387 
testified that for the past three years they had used corn meal mixed with Misto on their dance floor. This witness further testified that in his opinion the effect of dragging the corn meal mixture out onto the linoleum would be about the same as on any other floor. He also testified that they had used on their floor the quantity of the mixture shown to have been used on the floor in this case. On cross-examination by Mr. Connelly, the witness was asked:
"Q. Can it [referring to the mixture] be dragged out or accumulated on the soles or heels of shoes and be dragged out of the gymnasium? Have you had any experience with that? A. Well, it is about the same as what they used to use. Q. I mean the whole mixture? A. Well, it sticks to the shoes just the same; that is, if you take a pair of shoes that they have been dancing with on the floor and you rub your hand over the bottom of them, they are smooth and slick. Q. How about those polished floors after a couple of hundred dancers have danced and walked out over it? Have you noticed any slippery effect outside of the gymnasium? A. No, I couldn't say I have noticed anything excessive."
It was further shown that defendant had made an effort to ascertain a suitable substance to use on the floor to make it smooth for dancing and still protect the safety of the dancers, and, after such investigation, had decided on the mixture of corn meal and Misto.
The trial court did not permit defendant to introduce evidence of its charitable nature, on the theory that, until defendant had established that plaintiff was a recipient of its charity, the nature of the institution was not in issue.
Defendant, at the close of plaintiff's case, challenged the sufficiency of the evidence, and moved for a nonsuit; and, again, when all the evidence was in, defendant challenged the sufficiency of the evidence, and *Page 388 
moved for a directed verdict, upon the ground that no negligence on the part of defendant had been shown. These motions were denied.
The case was submitted to the jury, which returned a verdict in favor of defendant. Plaintiff moved for a new trial, setting up all the statutory grounds, which motion was granted, for the reason hereinbefore set out.
[1] The theory of the trial court in granting a new trial seems to have been, as shown by its memorandum opinion, that plaintiff was a stranger to, rather than a beneficiary of, defendant, and that, because of plaintiff's status as a stranger, it was error to submit to the jury the question of licensee or invitee.
It is undoubtedly true that, under the rule announced inHeckman v. Sisters of Charity, 5 Wn.2d 699, 106 P.2d 593, once it is determined that a plaintiff is not seeking or receiving any benefit which could be classed as charity, the charitable character of the corporation is not in issue, and it is subject to the normal rules governing tort liability of corporations. Granting, then, in this case that the YWCA was not exempt from liability on the basis of its charitable character, nevertheless, to determine its liability, if any, to plaintiff, as a stranger, the question of whether plaintiff was a licensee or an invitee is in issue if the facts show the existence of such a relationship.
Appellant has assigned error in denying its challenge to the sufficiency of the evidence and motion for nonsuit; in denying its challenge to the sufficiency of the evidence and motion for directed verdict; and in failing to enter judgment for defendant on the verdict of the jury.
[2] While this is an appeal from an order granting a motion for new trial, this court has adopted the rule that, when a motion for new trial is granted and an appeal *Page 389 
taken therefrom, even though the motion for new trial may have been properly granted on certain specific grounds, appellant may raise, and the court will consider, the question as to whether or not there was sufficient evidence to go to the jury. Sellman v.Hess, 15 Wn.2d 310, 130 P.2d 688.
The assignments present for our consideration two problems: First, a question as to the relationship between appellant and respondent; and, second, a question as to the negligence of appellant.
[3] While the reason assigned for granting a new trial is subject to some doubt, if this court can sustain the action of the trial court on any one of the grounds stated in respondent's motion, the action of the trial court may be upheld. Young v.Dille, 127 Wn. 398, 220 P. 782; Fuller v. Friedman,131 Wn. 282, 230 P. 155; State v. Douglas, 193 Wn. 425,75 P.2d 1005.
[4, 5] Let us now see what this court has said as to who is an "invitee" and who is a "licensee."
"An invitee is one who is either expressly or impliedly invited onto the premises of another for some purpose connected with the business in which the owner or occupant of the premises is then engaged, or which he permits to be conducted thereon; and to establish such relationship, there must be some real or supposed mutuality of interest in the subject to which the visitor's business or purpose relates. . . .
"He [a licensee] is one who goes upon the premises of another, either without any invitation, express or implied, or else for some purpose not connected with the business conducted on the land, but goes, nevertheless, with the permission or at the toleration of the owner." Schock v. Ringling Bros. etc., 5 Wn.2d 599, 105 P.2d 838.
[6] We are of the opinion that the evidence in this case establishes that respondent was an invitee rather than a licensee. It is true that the fact of invitation *Page 390 
alone is not sufficient to make one an invitee, as a licensee may be invited onto the premises purely as a social guest, and because there is no mutuality of benefit, in the business or commercial sense, the relationship of invitee, with its consequent legal duties, does not arise. See Comeau v. Comeau,285 Mass. 578, 189 N.E. 588, 92 A.L.R. 1002.
[7] In the instant case, respondent was invited onto the premises of appellant to assist in what might be termed a social affair, it is true, but the dance was a part of the program being carried on by appellant for Girl Reserves units. In other words, it was one of the methods employed by appellant to make the Girl Reserves more attractive to the girls. It was necessary that these dances be supervised, and respondent consented to act as such supervisor on this occasion. As bearing on the benefit received by appellant, in carrying out the program with the Girl Reserves, we desire to call attention to the case of Heckman v.Sisters of Charity, supra, and especially what was said beginning on page 705.
It should be kept in mind that we are not here dealing with a charitable corporation.
We are unable to agree with appellant that Mrs. Kalinowski was simply a social guest. It is true she did not pay for admission to the dance, nor was she paid as an employee for her services, but, as hereinbefore stated, she was there to aid the YWCA in a program which it sponsored for the younger girls. We think appellant, in carrying out this program, was benefited by the services of respondent. While we are of the opinion there is no evidence on which the jury could have based a verdict that respondent was solely a licensee, because of the view we have taken of other questions raised, it will not be necessary for us to determine whether error was committed by the *Page 391 
trial court in submitting to the jury an instruction on the question of licensee.
[8] The first assignment of error made by appellant is based on the contention that the evidence was insufficient to establish negligence on the part of the YWCA. The owner or occupier of a building owes to his invitee the duty of exercising ordinary care to make the floor reasonably safe for his use, or the duty to give to the invitee notice of a dangerous condition known, or which should have been known, to the owner, and unknown to the invitee. However, we stated in Shumaker v. Charada Inv. Co.,183 Wn. 521, 49 P.2d 44, that
"What is a reasonably safe condition, of course, depends upon the nature of the business conducted and the circumstances surrounding the particular situation."
[9] Before we discuss the evidence for the purpose of determining whether or not in this case the YWCA has met the duty required of it as an invitor, we desire to call attention to a few general rules.
The fact that respondent slipped and fell on the floor does not, of itself, tend to prove that the surface over which she was walking was dangerously unfit for the purpose. Knopp v. Kemp Hebert, 193 Wn. 160, 74 P.2d 924; Rothschild v. Fourth Market Street Realty Co., 139 Cal.App. 625, 34 P.2d 734. Furthermore, negligence is not proven by showing that the floor had been waxed and as a result was slippery. 4 Shearman and Redfield on Negligence (Rev. ed.) 1825, § 798. In the case ofShumaker v. Charada Inv. Co., supra, we referred to the case ofAbt v. Leeds Lippincott Co., 109 N.J.L. 311, 162 A. 525, wherein the court denied recovery to a guest of a hotel, who, while descending a flight of stairs which were waxed and highly polished and very slippery, fell and was *Page 392 
injured. The court held that, there being no evidence that the stairs were improperly constructed, that the waxing or polishing was improper, or that the stairs had been left in any other condition than is usual in waxed or polished stairs or floors, the plaintiff could not maintain her action. The placing of wax or similar substance on the floor to make it smooth for dancing has become an established custom, and, unless the owner has been negligent in the materials he used or in the manner of applying them, he is not liable to a person who falls thereon because of its slippery condition. Fishman v. Brooklyn Jewish Center,234 App. Div. 319, 255 N.Y. Supp. 124; Bonawitt v. Sisters ofCharity, 43 Ohio App. 347, 182 N.E. 661; Abt v. Leeds Lippincott Co., supra; Abbott v. Richmond County Country Club,211 App. Div. 231, 207 N.Y. Supp. 183, from which we quote:
"No actual defect in the floor was claimed upon the trial other than that it was smooth and slippery, though plaintiff had used it upon several prior occasions and knew of its condition. A former employee of the defendant testified that several people had slipped and fallen upon it prior to the accident and that he had reported it to the superintendent.
"Several witnesses called by the defendant denied that the floor was slippery, and the superintendent was unable to recall that his attention had been called to the fact that people had fallen upon it. The defendant's engineer who assisted in the construction of the building testified that the floor was of concrete, with a smooth finish. He described it as being somewhat similar to a city sidewalk, stained red in the concrete, and covered with a thin coating of linseed oil to prevent dust. He said it was the customary flooring used in golf club locker rooms.
"The defendant's motion for a nonsuit was denied on the ground that the evidence presented a question of fact for the jury, and the only question presented by this appeal is whether or not the defendant exercised *Page 393 
reasonable care in maintaining the floor in the condition described by the witnesses. Concrete floors are more or less slippery, but the use of such material for floors is not in itself a negligent act (Tryon v. Chalmers, 205 App. Div. 816,818), nor can negligence be predicated upon the fact that it was covered with linseed oil to prevent dust (Kipp v. Woolworth Co., 150 App. Div. 283; Curtiss v. Lehigh Valley Railroad Co.,233 N.Y. 554). Such a condition as is presented in the case at bar is not sufficient to charge a reasonably prudent person with the duty of foreseeing that one in the exercise of ordinary care using the floor would be exposed to danger. Although there is some evidence that others had fallen prior to the accident, we think the condition complained of was not such as to render the defendant liable for negligence."
We are of the opinion our own case of Chilberg v. StandardFurniture Co., 63 Wn. 414, 115 P. 837, in principle sustains the rule announced in the cases last hereinabove cited.
Respondent, to prove that appellant was negligent toward her, assuming that she was an invitee, must establish that appellant improperly prepared the floor, creating a dangerous condition, and with knowledge of this condition, either actual or constructive, failed to remedy it or to warn respondent of the danger. In other words, respondent must establish that appellant failed to exercise that degree of care that a reasonably prudent and careful owner would deem sufficient to protect the users of the floor, while exercising ordinary care for their own safety.
[10] Since we are here concerned with a challenge to the sufficiency of the evidence, respondent's evidence must be accepted as true, as well as all inferences which can reasonably be drawn therefrom. Geisness v. Scow Bay Packing Co., 16 Wn.2d 1, 132 P.2d 740. *Page 394 
 [11] Respondent's evidence establishes the following facts: Corn meal and Misto were placed on the dance floor in such quantities that some adhered to the shoes of the dancers. Respondent slipped while stepping from a rubber mat, placed at the entrance to the dance floor, onto the linoleum in the main lobby. Respondent had danced a great deal, and was familiar with the custom of placing wax on dance floors to make them smooth, and knew that a certain quantity of such wax would adhere to the shoes of those using the dance floor. Respondent had danced on this floor the evening in question, and on several occasions prior to the accident had gone out of the dance hall, over the rubber mat, into the lobby. Two other persons had slipped near the spot where respondent's accident occurred.
Respondent attempted to create an inference of a dangerous condition, and knowledge thereof on the part of appellant, from the fact that the rubber mat was placed at the entrance to the gymnasium. It is apparently respondent's theory that the YWCA knew the corn meal mixture was carried on the shoes of the dancers onto the linoleum, and that this created a danger of falling on the linoleum, the knowledge of the dangerous condition and the dangerous condition itself being imputed from the fact that appellant had placed a mat at the entrance to the dance floor.
Of course, there is the additional fact that respondent slipped, which of itself is not sufficient to establish negligence. Furthermore, the use of this mixture to make the floor smooth is not negligence per se, since it is customary to so prepare a floor for dancing. There is no evidence that appellant did not use the approved method of putting the corn meal mixture on the floor, or that the mixture was not a proper one for the purpose for which it was here used. *Page 395 
As a result, applying the general rules above set forth, there is no evidence that there was a dangerous condition, nor is there evidence that appellant was negligent toward respondent, or failed in its duty toward her in any way.
[12] But even assuming that a dangerous condition did exist, appellant was still entitled to a directed verdict, for, as herein stated, respondent testified that she knew it was customary to put wax or a similar substance on dance floors; that a certain amount of wax would adhere to the shoes of dancers; that she knew there was wax or some substance on the soles and heels of her shoes the night of the dance, she having danced several times; that she had on several occasions gone out of the dance hall, over the rubber mat, and across the linoleum to the cashier's desk, to get nickels for the nickelodeon. Respondent therefore knew, or as a reasonably prudent person should have known, that the substance used on the dance floor would not only make the dance floor slippery, but that some of it would adhere to the shoes and make them smooth and slippery, and would also be tracked out onto the linoleum by those going from the dance floor out to the lobby. There was therefore no negligence on the part of appellant in failing to warn respondent or to take steps for her further safety. See Chilberg v. Standard Furniture Co.,63 Wn. 414, 115 P. 837.
In conclusion, it is our opinion the evidence wholly failed to establish negligence on the part of appellant, and therefore the motion for a directed verdict should have been granted. The question of whether the instructions given were or were not proper thus becomes immaterial.
The order of the trial court granting a new trial is *Page 396 
therefore reversed, with instructions to dismiss the action.
SIMPSON, C.J., BEALS, and ROBINSON, JJ., concur.