[Civ. No. 4437.   Second Appellate District, Division Two.—June 17, 1927.]

MIKE ALECHOFF et al., Respondents, v. LOS ANGELES GAS AND ELECTRIC CORPORATION (a Corporation), Appellant.

34

Paul Overton, S. W. Guthrie, Samuel Poorman, Jr., and Douglas Van Dyke for Appellant.

William Lewis and Guy Lewis for Respondents.

MURPHEY, J., *pro tem.*—This is an appeal by defendant from a judgment in favor of plaintiffs in an action wherein they sought damages for the destruction of property by a fire set by defendant which spread to the premises occupied by the plaintiffs. The property in question comprised personal property owned by plaintiffs and certain

buildings occupied by them situated upon real property held by the plaintiffs under an executory sale contract. The facts as found by the court are substantially as follows: That on or about the third day of December, 1921, the defendant started a fire within the city limits of the city of Vernon, county of Los Angeles, about 5 o'clock A. M., in a pile of rubbish deposited by it on a vacant lot about two hundred feet long and ten to twenty-five feet wide and of considerable height, averaging about eight feet; that while burning, the flames therefrom rose at times to as high as forty feet in the air, and the smoke and sparks therefrom rose to a height of about two hundred feet into the air; that about twenty-five feet directly south of and extending several hundred feet easterly and westerly from the spot where said rubbish pile was located the city of Los Angeles maintained a yard for the storage of power poles and fence posts which at the time of said fire had several hundred poles distributed throughout said yard; that the burden of the burning of said rubbish was finished about 8:30 o'clock A. M., and at that time there were pieces of wood and refuse scattered over the area, which said pieces of wood and refuse were still burning and alive with fire; that about 9 o'clock of said day a strong wind arose and commenced to blow from the northeasterly direction and fanned the said burning pieces of wood and embers and scattered them over the said burning area and carried the sparks therefrom among the poles in the said yard, causing the fire to break out in various places in and about the said pole yard; that during the period of time, to wit, from 5 o'clock A. M. until 9 o'clock A. M., the defendant had no more than four employees engaged in watching said fire and that from 8:30 A. M. until after said wind arose and swept said fire, defendant's employees failed and neglected to extinguish the burning embers scattered throughout said burning area; that during all of said time the said employees were present at the scene of the conflagration; that after the fire spread to the city pole yard it was carried and spread to the premises of the plaintiffs, located at 2056 East 37th Street, within the city limits of the city of Vernon, and burned, consumed, destroyed, and demolished certain personal property belonging to the plaintiffs and three barns situated upon said premises; that at the time of said fire

there was in full force and effect in the city of Vernon a city ordinance entitled "An Ordinance regulating the hours in which animals may be driven through the City of Vernon, and fixing the hours in which 'trash' may be burned in said city," which said ordinance was duly passed by the board of trustees of the said city of Vernon and adopted on the sixth day of July, 1915, and numbered 158. That it was provided in the said ordinance that "It shall be unlawful for any person to dispose of garbage, paper or other refuse ordinarily termed 'trash' by burning at any other time than between the hours of 5:00 o'clock a. m. and 9:00 o'clock a. m. of the same day. Such burning shall at all times be so confined or controlled that such pieces or particles as are alive with fire cannot fly ten feet therefrom without 'dying' or 'going out' and such burning shall be done at all times in such a manner that it cannot and shall not cause property surrounding such fire to be ignited"; that the fire was caused to extend and spread to the plaintiffs' property through the carelessness and negligence of defendant's employees and through their failure and neglect to have the same wholly extinguished by the hour of 9 o'clock A. M.

No question is raised as to the amount of damages awarded by the court. The defendant attacks the judgment and refusal of the court to grant a motion for a new trial upon the following grounds: (1) That the wind was such as to constitute the resultant fire on adjoining property an act of God for which defendant is not liable; (2) that the violation of the city ordinance did not constitute negligence (a) because the ordinance was designed to protect the public at large and is of no evidentiary value upon the question of negligence; (b) because the ordinance is impotent, no penalty having been prescribed for its violation; (c) because the ordinance is unintelligible; and (d) because the ordinance cannot be construed as prohibiting the existence of live embers after 9 o'clock A. M.; (3) that the plaintiffs as the vendees under an executory contract cannot recover for damages to the realty.

If this action were based entirely upon general statutory law without the interposition of a regulatory municipal ordinance, the question of plaintiffs' right of recovery would

not be simple of solution. Nevertheless, even under those conditions, in view of the findings of the court that at 8:30 A. M. the burden of the burning was finished and at that time there were pieces of wood and refuse on the lot that were still smoking and alive with fire and that the employees of the defendant during such time failed and neglected to extinguish the live embers scattered throughout the burning area, which findings are responsive to the evidence before the court, we are strongly inclined to the belief that this negligence might well be determined in law to be the proximate cause of the spreading of the flames to the adjoining property. However, in view of the fact that the findings show a clear violation of the city ordinance, it becomes unnecessary definitely to pass upon this phase of the case in sustaining the judgment. ██ Under the ordinance it was clearly the duty of the defendant to regulate the magnitude of any fire it contemplated starting so as to control and extinguish it within the time limit prescribed by law. Having failed to do this it was negligence, and this negligence not only contributed to the burning of plaintiffs' property, but the failure to comply with the mandates of the law is the primary, if not the sole reason, for the destruction thereof. The evidence demonstrates, and it is a matter of common knowledge, that in the territory here involved the prevailing sea winds increase in intensity after the early morning hours, and undoubtedly the ordinance in question was adopted with this fact in mind and for the purpose of preventing the wind from carrying embers to adjoining property. This viewpoint disposes of the appellant's argument that the wind constituted an intervening agency.

██ The defendant further contends that the ordinance is for the protection of the general public and may not be invoked in aid of individuals. In support of this contention it cites a Nebraska case, *Frontier Steam Laundry* v. *Connolly*, 72 Neb. 767 [68 L. R. A. 425, 101 N. W. 995], the opinion in which was rendered by three commissioners, which case we do not deem applicable to the facts in the case at bar. In a very terse and logical dissenting opinion rendered by Justice Sedgwick of that court the law is stated so clearly and concisely as to be in our judgment unanswerable. He states: "It is said in the opinion: 'If the duty imposed

by the ordinance is clearly intended for the protection and for the benefit of individuals or of their property, the violation of the rule prescribed tends to show negligence for which a recovery may be had; but, where the duty is plainly for the benefit of the public at large, then the individual acquires no new rights by virtue of its enactment and a violation of the rule is of no evidentiary value upon the question of negligence.' It is also said: 'In fact, in some cases their purpose is both for the welfare of the public at large and also for the protection of the personal and property rights of individuals. In such case the individual may adduce the failure to perform the duty enjoined as evidence of negligence.' So that the holding in this case is that to protect the personal and property rights of individuals is no part of the object of the ordinance. To this proposition I cannot agree. The opinion finds the object of the ordinance to be 'for the benefit of the public at large,' that is, for the public safety, and it is directly stated in the opinion that 'the purpose of section 53 of the ordinance which requires the erection of fireproof doors and shutters upon brick buildings within the city is to protect the general public against the spread of fire.' To protect the property of the people of the city · generally from destruction by fire, and if the object is to protect the property of all of the people of the city, it certainly must be a part of the object to protect the property of each individual citizen.'' We are not without authority on this question in our own state. In *Siemers* v. *Eisen,* 54 Cal. 418, the court says: ''The failure of any person to perform a duty imposed upon him by a statute or other legal authority should always be considered evidence of negligence or something worse. Whether it constitutes such negligence as tended to cause the injury to the plaintiff, in any particular case, is another question, the principles governing which are stated elsewhere; but such an omission must constitute just cause for complaint on the part of the state if not of individuals; and where no evil intent appears, the omission may properly be regarded as simple negligence. The omission to perform a legal duty being proved, the plaintiff ought not to be required to prove further that the act committed was inherently essential to the exercise of due care by the defendant. . . . So, if a specific duty is imposed

upon any person by law, or by legal authority, an action may be sustained against him by any person who is specially injured by his failure to perform that duty. It is an axiomatic truth, that every person while violating an express statute, is a wrongdoer, and as such is *ex necessitate* negligent in the eye of the law; and every innocent party whose person is injured by the act which constitutes the violation of the statute is entitled to a civil remedy for such injury, notwithstanding any redress the public may also have.'' To the same effect is *King* v. *San Diego Electric Ry.*, 176 Cal. 266 [168 Pac. 131]. In the case of *Mora* v. *Favilla*, 37 Cal. App. 164 [173 Pac. 770], the defendant unlawfully washed the sidewalk in front of his place of business at 10 A. M. in violation of a city ordinance prohibiting the washing of sidewalks between the hours of 8 A. M. and 6 P. M., and plaintiff, while passing, slipped, fell and broke his leg. The defendant argued that there was no negligence by reason of the violation of the ordinance because it was enacted for the purpose of conserving water, a public benefit. The court, however, said: ''We think it clear that, while the ordinance may have been designed also to conserve the water supply of the city, another purpose, and the principal purpose of the ordinance, obviously was that the sidewalks should not be made inconvenient, annoying and dangerous to the pedestrian population of the city during the hours when most in use.''

Defendant next contends that the ordinance is inoperative and invalid because no penalty is prescribed therein for its violation. The ordinance is prohibitory and the supreme court in this state, in *Richter* v. *Lightston*, 161 Cal. 260 [Ann. Cas. 1915B, 1028, 18 Pac. 790], says: ''There is no force to the argument that the ordinance as an attempted police regulation is futile in that it fixes no penalty for a violation of its terms. Its terms, it will be noted, are prohibitory. It forbids the issuance of a license within the inhibited district. It is the province of other ordinances to impose fines and penalties for the conduct of the prohibited business without a license, and in the case of the City of San Jose the charter itself makes such provision.'' There may have been other ordinances of the city of Vernon prescribing penalties to cover this unlawful act. Every intendment must be in favor of the validity of

the ordinance and it was incumbent upon the defendant to affirmatively show that there was no other provision in law outside the ordinance itself imposing penalties. It failed to assume this burden.

▪ The objection that the ordinance was unintelligible we regard as an overindulgence in technical refinement. Respective counsel argue learnedly and elaborately on the meaning of the word "than" as used in the ordinance. The lower court supplied the word "other" in its construction of the ordinance, which without doubt expresses the legislative intent. This, however, we deem to have been entirely unnecessary. No unbiased person can read the context and have any rational doubt as to its purpose and intent. Black on Interpretation of Laws, second edition, section 56, states: "The use of inapt, inaccurate, or improper terms or phrases in a statute will not defeat the act, provided the real meaning of the legislature can be gathered from the context or from the general purpose and tenor of the enactment. In such cases, the words in question will be interpreted according to that meaning which the legislature actually intended to express, although this may involve a departure from their literal signification." Furthermore, the same author, in section 47, says: "It is presumed that the legislature intends to impart to its enactments such a meaning as will render them operative and effective, and to prevent persons from eluding or defeating them. Accordingly, in case of any doubt or obscurity, the construction will be such as to carry out these objects."

There is much discussion as to whether lighted coals and live embers constitute fire. This strikes us as being in the same category as an attempt to demonstrate an axiom or to prove that black is black or fire is fire.

▪ Other specifications of error are made, but as they were not presented to the trial court, either at the trial or on the motion for a new trial, we shall not discuss them in view of the well-settled rule that questions not presented to the trial court in some appropriate manner will not be considered on the appeal.

▪ The next and last question presented by the defendant in opposition to the judgment of the trial court is that the plaintiff cannot recover for the destruction of buildings located on the premises described in the complaint.

The evidence conclusively shows that the plaintiffs were in the possession of the property under a purchase and sale agreement and that they had been in such possession for several years prior to the destruction caused by this fire. The case of *Lightner Min. Co.* v. *Lane,* 161 Cal. 689 [Ann. Cas. 1913C, 1093, 120 Pac. 771], definitely disposes of this matter adversely to the defendant's contention. The supreme court says: "It is a well settled proposition that the proper party plaintiff in an action for trespass to real property is the person in actual possession. No averment of title in plaintiff is necessary. (1 Chitty on Pleadings, 63; *Heilbron* v. *Heinlein,* 72 Cal. 371 [14 Pac. 22]; *Strohlburg* v. *Jones,* 78 Cal. 383 [20 Pac. 705]; *Pollack* v. *Cummings,* 38 Cal. 685; *Uttendorfer* v. *Seagers,* 50 Cal. 497; *Raffetto* v. *Fiori,* 50 Cal. 363; *McDonald* v. *Bear River etc. Co.,* 13 Cal. 230.) The person in possession can recover no damages for injuries 'except such as affect his own right, unless he holds in such relation to other parties interested that his recovery will bar their claim.' (4 Sutherland on Damages, sec. 1012.) A defendant who is a mere stranger to the title will not be allowed to question the title of a plaintiff in possession of the land. It is only where the trespasser claims title himself, or claims under the real owner, that he is allowed to attack the title of the plaintiff whose peaceable possession he has disturbed. (21 Ency. of Plead. & Prac., 834.) One who is in possession under an agreement to convey giving him the right of possession, may maintain an action against a stranger to the title for a trespass which consists of the removal and conversion of the substance of the estate. (*Hunt* v. *Taylor,* 22 Vt. 556; *Miller* v. *Zufall,* 113 Pa. 325 [6 Atl. 350]; *Interlied* v. *Whaley,* 65 Hun (N. Y.), 407 [20 N. Y. Supp. 183]; *McFeters* v. *Pierson,* 15 Colo. 201 [22 Am. St. Rep. 388, 24 Pac. 1076].) He may even recover of his vendor for injuries amounting to waste, committed upon the premises after such delivery of possession." See, also, 27 R. C. L., sec. 291, *Fouts* v. *Foudray,* 31 Okl. 221 [Ann. Cas. 1913E, 301, 38 L. R. A. (N. S.) 251, 120 Pac. 960], and *Estate of Dwyer,* 159 Cal. 664 [115 Pac. 235], wherein the court says: "When a contract of sale of real property binding on the parties is executed, an equitable conversion is worked; the purchaser

of the land is deemed the equitable owner thereof and the seller is considered the owner of the purchase price."

From the foregoing it follows that the judgment of the lower court should be, and is hereby, affirmed.

Craig, P. J., *pro tem.*, and Thompson, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 15, 1927.