(No. 27032.—

THE ATHLETIC ASSOCIATION OF THE UNIVERSITY OF ILLINOIS, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(DOUGLAS A. PHILLIPS, Defendant in Error.)

*Opinion filed Sept. 21, 1943—Rehearing denied Nov. 11, 1943.*

SVEINBJORN JOHNSON, and BUSCH & HARRINGTON, for plaintiff in error.

CARSON & APPLEMAN, and ALROY S. PHILLIPS, (JOHN ALAN APPLEMAN, of counsel,) for defendant in error.

Mr. JUSTICE GUNN delivered the opinion of the court:

The circuit court of Champaign county confirmed an award of the Industrial Commission under the Workmen's Compensation Act in favor of Douglas A. Phillips and against the Athletic Association of the University of Illinois, because of injuries received by the former while participating in an entertainment sponsored by the latter. We have allowed a writ of error to this court.

The University of Illinois, a public corporation created by an act of the Illinois legislature, conducts the principal part of its functions at Urbana, Illinois. In connection with its educational activities different athletic sports are engaged in by the students, and competitive games had

with students of other universities and colleges. Charges for admission of the public to some of these games are made, and to a large extent the expenses of such athletic sports are paid from this source.

In 1928 the Athletic Association of the University of Illinois was organized as a non-profit corporation for the purpose of administering intercollegiate athletics and intra-murals. The former are contests between other colleges and universities, and known as varsity athletics. Intra-murals are contests between different fraternities or or-ganizations to which students of the university belong. The Athletic Association also administers all noncurricular recreational activities of the university. Through it the cost of intercollegiate games are paid from gate receipts charged the public. Its board of directors is nominated by the trustees of the university under the provisions of its charter.

Each year for many years past an entertainment known as "annual interscholastic circus" has been held at the University at the time of the annual track meet of the High School Athletic Association. The purpose of the circus is to afford entertainment of visitors and high school athletes attending the meet. The entertainers or perform-ers are all students in the university. At the 1939 meet-ing, in addition to the regular displays of skill and strength by the students, a special feature was added known as the "Carnival Side Shows," put on by the Tribe of Illini and eleven other fraternities. The carnival was directed by the Tribe of Illini. The Athletic Association charged an admission of twenty-five cents to the carnival, of which the Tribe received five cents. The Tribe put on an act called water follies, which included a dive from a balcony into a swimming pool covered with burning oil. Phillips, a member of the Tribe of Illini, was injured in perform-ing this stunt.

Douglas A. Phillips, nineteen years of age, had been a student at the university two years. He was a member of the swimming team, and had been awarded an "I" as a member of a water polo team. He was a member of the Tribe of Illini, a voluntary association of present and former students, who had earned an "I" by representing the university in athletic contests. The entertainment or circus for participants and visitors at the high school track meet was sponsored by the Athletic Association. Wendell Wilson was Director of Athletics of the university and vice-president of the Athletic Association. The performers were furnished by the student organizations, such as the Tribe of Illini, fraternities, and possibly other students. The university maintains a physical education department where instruction is given as a course of study, but this is distinct from the Athletic Association. The one teaches; the other supervises the contests and the income and disbursement from same.

The interscholastic track meet was an athletic event of high schools, no part of the university program, but held on its grounds and naturally preparation for the event would fall under the direction of the Director of Athletics. He assigned A. M. Jennings to be in charge of the circus. The latter suggested a water event, in the swimming pool in Huff Gymnasium, as one of the events. Both Jennings and Wilson were members of the Tribe of Illini. The former appeared before a meeting of the Tribe and asked if they would help put the circus over. The Athletic Association would sell tickets to the circus for twenty-five cents, and he said the Tribe could retain five cents out of each ticket sold. After some discussion the Tribe agreed to put on an event which included a fire dive to be performed by Phillips. The suggestion was made to the Tribe, not to any individual. The share of ticket money was to go to the Tribe, but no member thereof was paid.

Phillips says he was not to be paid anything. The plan for the water feature was laid out by Dave Israel, a member of the Tribe, who asked Phillips to make the dive, to which he agreed. The Tribe received $33.85. Free admission tickets were given the performers and to members of the Tribe of Illini. On the published program it is shown the carnival was directed by "Tribe of Illini," and also gives the names of "members of Tribe of Illini cooperating," among which is that of respondent Phillips. Engraved cups were to be awarded to the three organizations putting on the best show.

At the time the Tribe was requested to take a part it was left to its discretion to perform such acts as deemed best, and no member of the Tribe was paid by it for the services rendered. Upon the evening of May 20, 1939, Phillips made the fire dive into the pool from an overhanging balcony, and in so doing his head struck the bottom of the pool, suffering severe and permanent injuries. Upon this somewhat complex state of facts the Industrial Commission held the Athletic Association was an employer and Phillips an employee, and awarded compensation, which was confirmed by the circuit court.

The briefs of the parties cover a wide range of subjects, but two points stand out which are determinative of the case. First: was the Athletic Association of the University of Illinois, under the circumstances, an employer in respect to conducting the circus and carnival; and second: if the Athletic Association may be deemed an employer, was Phillips an employee thereof at the time of his accidental injury, within the meaning of the Workmen's Compensation Act?

There is no dispute in the facts, and hence the questions for decision are those of law. The statute provides an employer shall be construed to be "every person, firm, public or private corporation * * * who has any person in service or under any contract for hire, express or

implied, oral or written * * *." (Ill Rev. Stat. 1941, chap. 48, par. 141.) The term "employee" means "every person in the service of another under any contract of hire, express or implied, oral or written, * * * but not including * * * any person who is not engaged in the usual course of the trade, business, profession or occupation of his employer." Ill. Rev. Stat. 1941, chap. 48, par. 142.

It is, however, impossible to lay down any hard or fast rule or to state definite facts by which men working and contracting together can in all cases be classed as employees, independent contractors, or in any other relation than that of employer and employee. Each case must depend upon its own facts, and all must be construed together to determine the relation. (*Nelson Bros. & Co.* v. *Industrial Com.* 330 Ill. 27; *Olympic Commissary Co.* v. *Industrial Com.* 371 Ill. 164.) So here, in ascertaining whether the relation of employer and employee existed, we must consider not only the situation and relationship of the immediate parties, but also the fact that they were all connected with, and taking part in an activity of the university.

We take judicial notice of the fact the University of Illinois is a great educational institution, fostered and supported by the State, and attended by thousands of young men and women, for the purpose of obtaining education in the courses and studies afforded by such an institution. While, in the nature of things, such an institution can furnish the instruction, facilities and buildings for the purposes intended, the term "University" is meaningless unless it also includes the student body, for whose education the university was established. The facilities and instructors remain reasonably permanent, but the students are a constantly changing body which comes and goes with each year. It is unlike the public school, which for a few hours daily furnishes class-room instruction and

then releases the pupils to the control of the home. Here the student resides in houses, clubs and fraternities in the immediate vicinity of the university. To a certain extent they are under the direction and control of university authorities. Activities are afforded to engage time not necessary for study. This includes entertainment, athletics and places for social meeting. These can be availed of and enjoyed by the constantly changing student body, but the organization necessary to furnish and direct such activities comes principally from the administrative officers of the university, not the student body, which is of an impermanent character. The university is in fact an organized community, as distinct as a municipality, in which instruction and direction constitute one part, and students and their activities another.

Doubtless this situation caused the organization of the Athletic Association, as a corporation, to have direction of intercollegiate and intramural athletic competition. It afforded a means by which the considerable income derived from such contests could be used to finance interscholastic meets, as well as to direct the athletics of the university through its officers. Other agencies as a part of the university system aid in social and recreational and other activities. While the means of direction can be given by the governing body it requires a student body to furnish the material in the form of athletes or performers to render the association useful. Thus, each year, when the Inter-High School track meet was held there were present a number of young men who would soon be ready for the college, and nothing is more natural than that the entire university should be interested in such visitors being favorably impressed with their own school. This was one of the reasons for entertainment during their visit. It being a matter connected with athletics the arrangements should be under the control of the Athletic Association or its director.

When the interscholastic High School meet was to be held in 1939 preparations were necessary for the entertainment which ordinarily was called a carnival. This year another feature was to be added in the form of a circus, to organize which the Director of Athletics appointed Jennings. He asked the Tribe of Illini to cooperate. After some consideration it agreed, and appointed one of its own members to organize the affair. A small charge for admission was to be made, and out of each ticket the Tribe was to receive five cents. It had in the past been receiving its revenue from dues and entertainments. The Tribe selected its own performers, and the Tribe received the money from the share of the tickets sold. The individual members received nothing. Over forty members of the Tribe took part in the circus, and received credit therefor by having their names printed on the program. The carnival also was staged by student performers, who likewise had their names printed on the programs as "personnel."

The facts thus disclosed fail to show Phillips was in the service of the Athletic Association under a contract of hire. The act was put on by the Tribe of Illini, and Phillips, as a member, was requested, and agreed, to perform the fire dive. Certainly no contract was made between Phillips and the Athletic Association. Many cases are cited involving independent contractors, volunteers or licensees which have little application. It is clear the student body was giving the entertainment, but the organization and management was sponsored by the Athletic Association. It is a mere fiction to consider the forty members of the Tribe of Illini, or the other performers, as employees of the Athletic Association. It was an enterprise staged by members of the physical education department and of fraternities, wholly voluntary upon the part of each performer. They were giving a show to visitors and prospective students, and doubtless nothing was further from their

minds than considering themselves employees. Not all relations involving direction and co-operation result in the relation of employee and employer. When a church, or a union, or a civic club sponsors an entertainment to be featured by entertainment contributed by their respective members, the relation is not made that of master and servant merely because an admission charge is made for the benefit of the organization. Phillips testified Jennings asked the Tribe to take a part. He left it entirely to the latter to organize, and for the individuals to perform the feats they thought they could do the best. We are satisfied Phillips neither was, nor regarded himself, an employee of the Athletic Association.

None of the cases cited are very helpful. In *Indian Hill Club* v. *Industrial Com.* 309 Ill. 271, and *Forest Preserve District* v. *Industrial Com.* 357 Ill. 389, the injured person was admittedly an employee, the question for determination being for whom he was working. *Kijowski* v. *Times Publishing Corp.* 372 Ill. 311, was a case where it was claimed one paid by a truck driver to assist him was in fact the employee of the truck driver's employer, because the latter had knowledge of, and acquiesced in it. We held he was an employee of the truck driver. Probably the case nearest in point is *Stiles* v. *Des Moines Council Boy Scouts*, 229 N. W. (Iowa), 841, where it was held an Eagle Scout assisting in teaching less experienced scouts was not an employee entitled to compensation for injury, even though relieved of camp expense because of the work he was doing. The question is largely one of first impression, but under the facts there is a lack of proof of any kind of a contract of service between Phillips and plaintiff in error.

We have held the Workmen's Compensation Act will be liberally construed to give effect to its purpose, but a strained construction to include an occupation or employment not fairly within the act cannot be supported.

(*Marion Water Co.* v. *Industrial Com,* 368 Ill. 350; *Berry Co.* v. *Industrial Com.* 318 Ill. 312; *Hochspeier* v. *Industrial Board,* 278 Ill. 523.) To hold defendant in error was an employee under the circumstances shown in this case would give an interpretation to the term "employee" not embraced in the Workmen's Compensation Act, as contemplated by the General Assembly. It would make organizations and voluntary associations liable for accidental injuries for participations by its memberships in social or other activities, without any intention upon the part of either to be regarded as an employee under a contract of hire. Without here attempting to define the relationship of the parties it is clear Phillips was not an employee within the definition of the Workmen's Compensation Act. Not being an employee, it becomes unnecessary to discuss the other interesting questions discussed in the briefs.

The order of the circuit court of Champaign county is reversed and the cause remanded, with directions to set aside the award of the Industrial Commission.

*Reversed and remanded, with directions.*

Mr. CHIEF JUSTICE SMITH, dissenting: In my opinion the question of whether the relation of employer and employee was established, and all other questions in the case were questions of fact; that the findings of the Industrial Commission are not against the manifest weight of the evidence, but are supported by substantial evidence in the record. In this situation the findings of the commission are conclusive and should not be set aside by the court.