[L. A. No. 19463. In Bank. Mar. 28, 1946.]

FLORIDA EDWARDS, Respondent, v. HOLLYWOOD
CANTEEN (a Corporation), Appellant.

Schell & Delamer for Appellant.

Keith & Creede, Donald Gallagher, Richard Barry, Kathryn Flanagan, Everett A. Corten and R. C. McKellips as Amici Curiae on behalf of Appellant.

Stanton & Stanton for Respondent.

GIBSON, C. J.—Plaintiff, a volunteer hostess at the defendant Hollywood Canteen, was injured while dancing with a member of the armed forces on premises maintained by defendant. She brought this action for damages based on asserted negligence by defendant in permitting plaintiff's dancing partner to engage in rough and boisterous conduct without plaintiff's consent. Defendant has appealed from a judgment in favor of plaintiff.

The Hollywood Canteen is a corporation created for the purpose, among others, of providing recreational facilities for men in the armed forces. Plaintiff, a professional dancer and a radio actress, was requested by a federation of radio artists to which she belonged to assist defendant in entertaining enlisted men. She volunteered to act as a hostess on Saturday

evenings and her services were gratuitously given as a contribution of the local entertainment industry to the war effort.

Defendant maintained a dance floor and provided orchestras. Servicemen were admitted, free of charge, in groups of 500, and all men were inspected as they entered the premises by members of the military police and the Navy shore patrol.

On October 31, 1942, at the time of the accident, the dance floor was very crowded. At about eleven o'clock plaintiff, on duty as a hostess, consented to dance with a member of the Marine Corps. He immediately began to "jitterbug." Plaintiff protested, whereupon he took a firm grip on her arm and started to "throw" her around in "wild jitterbug antics." After dancing three or four minutes, during which plaintiff vainly attempted to get away and repeatedly screamed for help, the marine whirled or spun plaintiff around, letting go of her completely. He struck a table, lost his balance and failed to catch her, as a result of which she fell and was injured.

The trial court found that the serviceman's conduct in dancing in such a manner against plaintiff's will and on the crowded dance floor was dangerous and constituted him a boisterous person, that defendant in permitting him to dance in this manner violated city ordinances which made it unlawful for persons in charge of "any public dance hall, public dance or club dance" to permit any intoxicated, boisterous or disorderly person to enter or remain, or assist in any such dance, and that defendant was negligent.

A preliminary question is whether plaintiff was an "employee" within the meaning of the workmen's compensation provisions of the Labor Code, since, if she was, she should have applied to the Industrial Accident Commission for relief rather than to the superior court, it not appearing that defendant had failed to secure payment of compensation to employees as required by the code. (Lab. Code, §§ 3601, 3706.) Section 3351 of the Labor Code, which governs workmen's compensation cases, defines "employee" to mean "every person in the service of an employer under any appointment or contract of hire or apprenticeship, express or implied, oral or written, whether lawfully or unlawfully employed. . . ." It is asserted that plaintiff does not fall within this provision because the trial court found that the junior hostesses, including plaintiff, were "volunteers," that none of them received pay, and that their services were "gratuitously given as a

contribution of the local entertainment industry . . . to entertain and render comforts to service men on leave.''

Under the statutory definition there must be a contract of hire or employment, although a *pecuniary* consideration is not required, and services voluntarily and gratuitously performed are not included. (*McBurney* v. *Industrial Acc. Com.,* 220 Cal. 124 [30 P.2d 414]; *Hartford A. & I. Co.* v. *Industrial Acc. Com.,* 139 Cal.App. 632, 637 [34 P.2d 826]; see *Gabel* v. *Industrial Acc. Com.,* 83 Cal.App. 122, 125 [256 P. 564]; *Union Lumber Co.* v. *Industrial Acc. Com.,* 12 Cal.App.2d 588, 595-596 [55 P.2d 911]; 27 Cal.Jur. 277-278.) For example, the Industrial Accident Commission has said that a carpenter injured while donating his services to the Red Cross was not working in its employ, because a gift, rather than a contractual relationship, was intended. (*Hitchcock* v. *American Red Cross* (1919), 6 I.A.C. 58.) In another case the commission concluded that an individual acting as a guard during a liberty bond drive ''was rendering gratuitous service as a mere volunteer'' and was not working under a contract of hire. (*Vest* v. *Shaul* (1922), I.A.C. 292; see, also, *Heinrichs* v. *Trustees of Zion Church,* 7 C.C. 164; *Calavan* v. *Pitts,* 10 I.A.C. 24.)

A like interpretation has been made in other jurisdictions having statutes similar to section 3351. In *Bituminous Casualty Co.* v. *Industrial Com.* (1944), 245 Wis. 337 [13 N.W.2d 925], school teachers injured while assisting in issuance of war ration books were held to be volunteers, moved solely by patriotism, and not working under a contract of hire. A person voluntarily participating in a carnival for prospective students of a university was not considered to be an employee under a contract of hire. (*Athletic Assn. of University of Illinois* v. *Industrial Com.,* 384 Ill. 208 [51 N.E.2d 157]. See, also, *Brannaman* v. *Richlow Mfg. Co.,* 106 Colo. 317 [104 P.2d 897, 898]; *Harris* v. *Seiavitch,* 336 Pa. 294 [9 A.2d 375]; *Smith* v. *State Ind. Acc. Com.,* 144 Or. 480 [23 P.2d 904, 25 P.2d 1119]; cf. *Powell* v. *Twin Drilling Co.,* 300 Mich. 566 [2 N.W.2d 505].)

The case of *County of Monterey* v. *Industrial Acc. Com.,* 199 Cal. 221, 224, 226 [248 P. 912, 47 A.L.R. 359], is distinguishable. It was there held that a deputy sheriff serving under an ''appointment,'' rather than under a ''contract of hire,'' was an employee even though he received no pay. It is clear, however, that a citizen compelled by a sheriff to act

as a deputy is not a "volunteer," since the law imposes a duty to serve. The difference between compulsory service in public emergency (giving rise to a legal relationship of employment), and purely volunteer service, has been recognized in other jurisdictions, although the rule is not uniformly adopted. (*Eaton* v. *Bernalillo County*, 46 N.M. 318 [128 P.2d 738, 142 A.L.R. 647]; see cases collected in 142 A.L.R. 657; *cf. Long Beach* v. *Industrial Acc. Com.*, 4 Cal.2d 624 [51 P.2d 1089].) In *Department of Natural Resources* v. *Industrial Acc. Com.*, 208 Cal. 14 [279 P. 987], it was held that a volunteer deputy fish and game warden, serving without pay, was not entitled to workmen's compensation.

*Tucker* v. *Cooper*, 172 Cal. 663 [158 P. 181], cited by the Industrial Accident Commission in an amicus curiae brief, does not hold that a person can be an employee although serving gratuitously. The case involved an exchange of services between the plaintiff and the defendant, which supplied ample consideration for a contract, and the court properly held that the right of control existed and that there need be no *pecuniary* compensation. (172 Cal. at pp. 667-668.) Furthermore, the Tucker case did not involve the workmen's compensation law.

It is unnecessary to pass upon the question of whether the Legislature, under section 21 of article XX of the Constitution, may provide compensation benefits for persons injured in the course of services which are rendered gratuitously. (See, for example, Lab. Code, §§ 3361, 4301-4337, relating to registered volunteer firemen and registered civilian defense workers.) We hold only that volunteer gratuitous services are not within section 3351, the only provision which might bring plaintiff within the compensation law.

The next question, therefore, is whether defendant was negligent in failing to stop plaintiff's partner from dancing with her in a boisterous manner. There are two aspects to the problem: first, whether defendant owed plaintiff a duty of care to protect her against such conduct by her partner, and, second, whether the evidence supports the finding that, under all the circumstances of this case, defendant violated its duty.

In determining that such a duty of care existed, the trial court relied, at least in part, on the city ordinances which made it a misdemeanor for any person to permit any intoxicated, boisterous, or disorderly person to enter or remain in any public dance hall, public dance, or club dance. The court

found that defendant violated these ordinances and was negligent. If it appears that the ordinances, under their terms, were applicable, it was clearly proper for the trial court to look to them in ascertaining the standard of conduct required of defendant. As said in *Clinkscales* v. *Carver*, 22 Cal.2d 72, 75 [136 P.2d 777] : "A suit for damages is based on the theory that the conduct inflicting the injuries is a common-law tort. . . . The significance of the statute in a civil suit for negligence lies in its formulation of a standard of conduct that the court adopts in the determination of such liability. (See Holmes, The Common Law, 120-129 ; Morris, *The Relation of Criminal Statutes to Tort Liability*, 46 Harv.L.Rev. 453.) The decision as to what the civil standard should be still rests with the court, and the standard formulated by a legislative body in a police regulation or criminal statute becomes the standard to determine civil liability only because the court accepts it. . . . When a legislative body has generalized a standard from the experience of the community and prohibits conduct that is likely to cause harm, the court accepts the formulated standards and applies them . . ., except where they would serve to impose liability without fault." (See, also, *Hopper* v. *Bulaich, ante,* p. 431 [164 P.2d 483].)

Defendant contends that it is not within these ordinances because it did not admit all members of the public, but only enlisted men in the armed forces, and, further, because it did not charge an admission fee. The fact, however, that the ordinances cover club dances as well as public dances indicates an intent to include dances to which large and more or less indiscriminate groups of the public are invited, regardless of whether any charge is made. Also, legislation must be interpreted where possible to fully carry out its purpose, and here the obvious intent was to afford certain safeguards for the protection of persons attending such dances. Although the dances held at the canteen may not have been "public" in the strictest sense of the term, they were clearly of the type to which the prescribed safeguards were appropriate, and plaintiff was within the class designed to be protected.

Moreover, a duty of care to protect plaintiff from boisterous and rough conduct of third persons may be based upon common-law principles of negligence. In considering this question it is first necessary to determine the relationship between the parties. It appears that plaintiff was on defendant's premises at the request or invitation of defendant

for the purpose of aiding it in the promotion of its objective of providing gratuitous entertainment for members of the armed forces. Thus while plaintiff was invited on the premises for what might be viewed in the nature of a social affair, the entertainment carried on was part of defendant's corporate function and plaintiff was present to aid in fulfillment of that function, and it is therefore quite clear that defendant received a benefit from the presence of plaintiff. (See *Kalinowski* v. *Y.W.C.A.*, 17 Wn.2d 380 [135 P.2d 852]; *Heckman* v. *Sisters of Charity, etc.*, 5 Wn.2d 699 [106 P.2d 593].) The benefit conferred in this case on defendant by plaintiff was not that intangible social benefit conferred by social visitors which *Comeau* v. *Comeau*, 285 Mass. 578 [189 N.E. 588, 92 A.L.R. 1002], held was not sufficient to entitle the plaintiff there involved to a duty of care higher than that owing to a gratuitous licensee.

The fact that the benefit conferred by plaintiff on defendant corporation was of a nonmonetary character does not affect the duty owed to her. In *Kalinowski* v. *Y.W.C.A.*, *supra*, the plaintiff, a volunteer supervisor of a dance group was not a paid employee, nor had she paid admission to the dance, yet it was held that she was not a social guest since she was there to benefit the defendant in the carrying out of its program. (See, also, 4 Shearman & Redfield on Negligence, § 779, pp. 1783-1789; *cf. Davis* v. *Central Congregational Society* (1880), 129 Mass. 367 [37 Am.Rep. 368].)

Thus if plaintiff was on the premises with the express or implied invitation and for the sole benefit of defendant occupier, or for their mutual benefit, defendant owed a duty to plaintiff to exercise ordinary care to render the premises safe and to protect her from injury. (*Miller* v. *Pacific Constructors, Inc.*, 68 Cal.App.2d 529 [157 P.2d 57]; *Buckingham* v. *San Joaquin Cotton Oil Co.*, 128 Cal.App. 94 [16 P.2d 807] [deliveryman on premises delivering goods when injured]; *Locke* v. *Red River Lumber Co.*, 65 Cal.App.2d 322 [150 P.2d 506] [purchaser of goods remaining on premises after store hours].) In the Kalinowski case, *supra*, at page 391, it was declared that the volunteer supervisor there involved was an invitee to whom the defendant owed a duty to exercise ordinary care.

The next question is whether the standard of care imposed in the foregoing cases applies where the injury results from acts of a third person on the premises. In *Thomas*

810

v. *Studio Amusements, Inc.*, 50 Cal.App.2d 538 [123 P.2d 552], the plaintiff sought recovery for defendant's failure to control reckless and speedy roller skating by third parties on defendant's rink. It was there held that while the operator of the skating rink was not an insurer of the patron's safety, nevertheless he owed a duty to protect patrons from risks other than those normally incident to the sport. The court said that "it cannot be argued that one of the normal risks involved is the reckless action of other skaters capable of being prevented by guards. . . ." (P. 543.)

In *Worcester* v. *Theatrical Enterprises Corp.*, 28 Cal.App. 2d 116 [82 P.2d 68], which presented facts wherein a patron in a theater was kicked in the back by an intoxicated person, the court recognized that the possessor of premises is liable only where it knew, or should have known, of existing danger. (See, also, *Anderson* v. *Ocean Sport Fishing, Inc.*, 28 Cal. App.2d 712 [83 P.2d 515]; *Fitzgerald* v. *Million Dollar Theatre, Inc.*, 61 Cal.App.2d 17 [141 P.2d 935].) Other jurisdictions have recognized this affirmative duty to control another's conduct and thus protect a business invitee who is on the premises for the mutual benefit of the land occupier and the invitee. (Rest., Torts, § 348; Prosser on Torts, pp. 199, 609; 35 Mich.L.Rev. 843; 43 Yale L.J. 886.) From the foregoing it is clear that the occupier is under a duty to protect visitors such as plaintiff by taking appropriate measures to restrain conduct by third persons which he should be aware of and which he should realize is dangerous.

 The evidence in the present case is sufficient to support the findings that defendant violated the ordinances and was negligent. Plaintiff's testimony shows that her partner danced with her in a rough and boisterous manner for a period of approximately three or four minutes immediately before the accident, during which time she repeatedly screamed for help. He weaved his way in and out of the crowd on the floor, dancing "fast and furious," and plaintiff said she was hitting people every way she turned. She testified, further, that the tempo of the music suddenly increased and that her partner "became wild with it . . . getting so rough he was almost tearing me to pieces." He threw plaintiff out from him and spun her around and then grabbed her and pulled her back to him at least once before she fell. Another hostess, observing a strange expression on plaintiff's face, attempted to reach plaintiff and her partner to ask him to leave the floor, but

before she could do so the accident occurred. From this testimony the trier of fact could reasonably conclude that those in charge of the dance, in the exercise of due care, should have observed the marine's conduct, realized that it was likely to result in injury, and stopped it. (See *Thomas* v. *Studio Amusements, Inc.*, 50 Cal.App.2d 538, 543 [123 P.2d 552], where reckless conduct for a similarly short period of time was held sufficient to permit a finding that the proprietor should have prevented its continuance.)

The trial court concluded as a matter of law that the defense of assumption of risk was not available to defendant, and in a written opinion cited section 2801 of the Labor Code which provides that assumption of risk is not a defense in an action for personal injuries by an employee based upon negligence of the employer. Defendant contends that plaintiff was not an employee within the meaning of this section and, therefore, that the trial court erred in failing to find thereon. Although we have determined that plaintiff was not an employee under the workmen's compensation law, this, of course, does not necessarily mean that she is not entitled to the benefits of section 2801 of the Labor Code. We find it unnecessary, however, to determine whether plaintiff was within the cited section because a complete answer to defendant's contention is that the court found that the marine danced boisterously with plaintiff "against her will," and this finding, supported by the evidence, is sufficient to show that plaintiff could not have assumed the risk of his boisterous and reckless conduct. As shown, plaintiff protested dancing the jitterbug as soon as her partner commenced it, whereupon he took a firm grip on her arm and refused to let her go. Plaintiff testified also, that because of her inexperience with the jitterbug dance, the manner in which he held her and the gyrations of the dance she was unable to free herself when the marine whirled or spun her. Although he had let go of her momentarily, there is other testimony to the effect that in dancing the jitterbug the girl cannot escape from a spin into which she has been launched, without "landing on her ear . . . she can't walk away from it upright." The evidence is sufficient to support the finding, and we cannot say that the trial court acted unreasonably in adopting plaintiff's version of what took place and in rejecting evidence to the contrary.

There is also evidence to support the finding that plaintiff was not guilty of contributory negligence. While

there is testimony indicating that the marine had been drinking, the trial court could have concluded that plaintiff's dancing partner gave no appearance of being either intoxicated or of a dangerously boisterous character until he had grasped plaintiff and commenced dancing with her, after which she could not escape.

Defendant is not exempt from liability on the ground that it is a charitable organization. The authorities in other jurisdictions are divided on the question of whether a *recipient* of charitable benefits may recover for negligence by the charitable organization, but by the great weight of authority, and clearly the rule in California, persons who are not recipients of the charity, such as employees and strangers, may maintain an action based on negligence. (See cases collected in 3 Scott on Trusts (1939), § 402; 14 A.L.R. 576, 581, 585; 133 A.L.R. 821; *Silva* v. *Providence Hospital,* 14 Cal.2d 762, 772-773 [97 P.2d 798] ; *Phoenix Assur. Co.* v. *Salvation Army,* 83 Cal.App. 455 [256 P. 1106].) In the Silva case it was held that a charitable organization must respond in damages to a paying patient whom it injures, the court stating that the policy of the law requiring individuals to be just before generous is applicable to charitable corporations. (14 Cal.2d at p. 775.) It is obvious that the plaintiff in this case was not a recipient of charitable benefits and, therefore, is not barred by any rule of exemption.

Defendant finally contends that the award of general and special damages is excessive. The evidence shows that as a result of the accident plaintiff suffered a dislocated coccyx, wrenched vertebrae in the lower spine and severe shock. Her injuries caused great pain which continued to the time of trial, and resulted in a loss of earning capacity. An operation, which might relieve the condition, would cost about $1,000. Under the circumstances, we cannot say that the award of $5,000 general damages is excessive. (*Mondine* v. *Sarlin,* 11 Cal.2d 593, 599 [81 P.2d 903] ; *Slaughter* v. *Van Winkle,* 213 Cal. 573 [2 P.2d 789].)

The accident confined plaintiff to her home for two months and thereafter she took whatever employment was available, but she was unable to hold any position for an extended period because of the pain she was suffering. As a result of the accident she was replaced by another person on a weekly radio program which, together with her other earnings, would have provided her with at least $55 a week. The trial

court awarded her approximately this sum per week, less her actual earnings, from the date of the accident to the entry of judgment. The award of special damages is supported by the evidence.

The judgment is affirmed.

Shenk, J., Carter, J., Traynor, J., and Spence, J., concurred.

Appellant's petition for a rehearing was denied April 25, 1946. Schauer, J., voted for a rehearing.