Christine HIBBS, Appellant,

v.

BROWN HOTEL COMPANY, Appellee.

Court of Appeals of Kentucky.

May 10, 1957.

———◆———

Matthew B. Quinn, Jr., Robert A. Becht, Louisville, for appellant.

Woodward, Hobson & Fulton, Fielden Woodward, Louisville, for appellee.

MILLIKEN, Chief Justice.

After hearing the testimony of the appellant (plaintiff below), Christine Hibbs, and the reading of the deposition of Harold E. Harder, Managing Director and Vice President of the Brown Hotel Company (defendant below), the trial court directed a verdict for the Hotel upon the ground that no negligence on the part of the Hotel was established and on the further ground that the appellant, Christine Hibbs, had assumed the risk of the injury which befell her. The injury and how it occurred were admitted.

The Brown Hotel is perhaps "Louisville's Finest." The appellant, a woman sixty years of age, was escorted to the Bluegrass Room of the Hotel about 9:30 one evening for dinner and dancing. After ordering their meals, the couple danced on the small dance floor and left the floor after the appellant was hit on the ankle by a "jitterbug" couple, apparently the lone "jitterbuggers" on the dance floor. Sometime later, when the "jitterbuggers" were off the floor, the appellant and her escort ventured forth again, danced about halfway around the floor, and started back to their table upon the reappearance of the "jitterbugs." As they were approaching their table, the "male jitterbug" backed into the appellant, causing her to lose her balance, strike her elbow against a post, and fall to the floor. The incident upset the appellant both physically and emotionally, resulting in her not being able to finish her meal. She did not consider the blow to her elbow anything serious, but the next day her arm was badly swollen, required medical treatment, and about a month later surgery was performed on the elbow.

■ The appellant bases her case on the theory that the Hotel had the duty to prevent "dangerous" dancing on the dance floor, while the Hotel contends that it had no knowledge of any "dangerous" dancing on the floor that evening although the orchestra leader and employees were requested to report any untoward conduct and to prevent it. The "jitterbugs" described in

the testimony were active, not rowdyish; enthusiastic, not callous. If they were conspicuous they still remain unidentified. So far as the record of the testimony reveals, the dance floor was not so crowded that "jitterbugging" was so inconsiderate it amounted to reckless conduct. On the evidence presented, we concur with the conclusions of the trial court that the Hotel was not negligent and that the risk involved here came within the scope of those ordinarily assumed by devotees of the dance. The Hotel is not an insurer.

Furthermore, we do not find the facts of the present case come within the principle of cases cited by the appellant to support her contention of negligence on the part of the Hotel. In Edwards v. Hollywood Canteen, 27 Cal.2d 802, 167 P.2d 729, 730, a marine went berserk at a public dance hall and threw a screaming hostess around "in wild jitterbug antics," resulting in her injury. A city ordinance imposed a duty on the proprietor of a public dance hall to prevent such disorderly conduct and the proprietor, in this instance, did not come to the rescue of his hostess despite the fact she screamed for help and there appeared ample time to rescue her. In other words, the proprietor was clearly negligent. No complaint was made by the present appellant to the Hotel at the time of the dance.

Moore v. Smith, 6 Ga.App. 649, 65 S.E. 712, involved injury to one customer as a result of a fight between two other customers in a poolroom, and Fimple v. Archer Ballroom Company, 150 Neb. 681, 35 N.W. 2d 680, involved an instance where a patron at a public dance hall was struck by a bottle thrown by another patron, both cases thus involving disorderly conduct—a form of conduct against which patrons of such businesses impliedly were promised protection by the proprietors.

We wish to make it clear that we are not absolving "jitterbugging" of legal consequences in all circumstances any more than we are calling it dangerous per se. We are merely saying that in the circumstances of the present case we do not find the exercise of the frantic art disorderly conduct or such conduct that the management of the Hotel was required to prevent it—assuming it had reasonable notice—in order to protect its dancing patrons. See 52 Am.Jur., Theatres, Etc., Sections 52 and 56.

The judgment is affirmed.