[Civ. No. 17784.   First Dist., Div. Two.   Oct. 20, 1958.]

WALTER E. CHISHOLM, Respondent, v. CALIFORNIA
JOCKEY CLUB (a Corporation), Appellant.

Alexander, Bacon & Mundhenk and McCarthy, O'Hara & Johnson for Appellant.

Philander Brooks Beadle and John T. Tully for Respondent.

KAUFMAN, P. J.—Plaintiff, Walter E. Chisholm filed a complaint seeking damages for the death of his race horse, Romanticon, allegedly caused by the negligence of the defendant, owner and operator of the Bay Meadows Race Track. Defendant appeals from a jury verdict in favor of the plaintiff on the grounds of certain prejudicial errors in the court's instructions to the jury.

Defendant conducts horse races at Bay Meadows and invites owners of horses to stable their horses at the track and enter them in the races. No fee is charged for the stabling of horses. The defendant, however, retains as its profit, a portion of the sums wagered on the races. In the Fall of 1950, the plaintiff, through his trainer, Hank Ross, applied for and was assigned stable space for several of his horses at Bay Meadows. Before the beginning of the fall races, Romanticon, became ill and died on October 9, about three weeks after arriving at Bay Meadows. There was conflicting evidence as to whether Romanticon's death was caused by a parasite commonly associated with colic which the horse had previously had or from gastroenteritis produced by fly-borne bacteria resulting from the unsanitary condition of defendant's stables. There was also conflicting evidence on whether defendant had exercised ordinary care to maintain its stables in a sanitary condition, and whether defendant had adequately removed manure from the stables twice a week as required by city ordinance. The sufficiency of the evidence to sustain the verdict of the jury is not questioned.

Rather, defendant argues that the court's instructions to the jury incorrectly stated the law. The first instruction complained of reads as follows:

"The violation of a statute or ordinance, except as to speed, constitutes negligence as a matter of law. Unless, however, such violation is a proximate cause of injury it becomes immaterial. There must appear to be a causal connection between the violation of law and the injury before it becomes material to the issue."

Plaintiff introduced into evidence two ordinances of the city of San Mateo. Ordinance Number 350 in its terms declared to be "necessary as an emergency measure for pre-

serving the public health of the City of San Mateo.'' The ordinance sets up specific requirements for the construction and maintenance of stables and the keeping of horses, mules or cattle within the city limits. The relevant portion of the ordinance, section 6, reads as follows:

''The manure, offal, soiled straw and other refuse from all stables, barns, sheds, stalls, corrals or other yards where such animals are kept shall be placed immediately upon removal therefrom in tight and closely covered receptacles, constructed of concrete or other approved material impervious to water, and kept covered until removed from the premises or destroyed.

''The contents of such receptacles shall be removed at least twice a week, or oftener, if ordered by the Health Officer of the City of San Mateo.''

Ordinance Number 614 defines public nuisances affecting health, morals, decency and safety and provides for the abatement of such nuisances. The relevant portion of this ordinance, section 2, reads as follows:

''Section 2. Health Nuisances. Subject to the definitions of Section 1 and in addition to any other provisions of this ordinance, the following are declared to be nuisances affecting public health, and shall be abated as such.

.   .   .   .   .   .   .   .   .   .   .   .   .   .

''5. Improperly covered accumulations of manure or rubbish which are breeding places for flies, mosquitoes or vermin, or which give forth noisome gases. Abatement may be summary.''

Defendant argues that the above quoted instruction is erroneous as these ordinances do not prescribe a standard of care to prevent the sickness and death of a horse, but only a standard of care to prevent the sickness and death of human beings, or at the most a duty to the general public, citing *Boie-Hansen* v. *Sisters of Charity*, 152 Cal.App.2d 845 [314 P.2d 189], and *Routh* v. *Quinn*, 20 Cal.2d 488 [127 P.2d 1, 149 A.L.R. 215].

We do not think that the ordinances in question are as restrictive in their purpose as the defendant claims. ''The term 'public health' is not susceptible to accurate definition since it takes on new definitions when new conditions arise, but generally speaking, it means the wholesome condition of the community at large.'' (39 C.J.S., Health 1, p. 811; *State* ex rel. *Anderson* v. *Fadely*, 180 Kan. 652 [308 P.2d 537, 548].) The health of horses and cattle is

vital to the maintenance of public health. (*Stickley* v. *Givens,* 176 Va. 548 [11 S.E.2d 631].) In this state, public authorities have the right to quarantine or destroy diseased animals and certain diseased animals are public nuisances. (See, for example, Agr. Code, §§ 205-207.) If such property can be destroyed for the protection of public health, it cannot be argued that an ordinance which protects public health, does not also protect property. ■ An ordinance may be intended for the health and safety of the public in general and the protection of property rights of individuals as well. (*Reid & Sibell, Inc.* v. *Gilmore & Edwards Co.,* 134 Cal.App.2d 60 [285 P.2d 364]; *Edwards* v. *Hollywood Canteen,* 27 Cal.2d 802 [167 P.2d 729]; *Alechoff* v. *Los Angeles G. & E. Corp.,* 84 Cal.App. 33 [257 P. 569].) We conclude therefore that the above quoted instruction was not prejudicial to the defendant.

The court in its instructions indicated that apart from the standard of care set by the ordinances, the defendant owed certain duties of ordinary care to the plaintiff. The second instruction complained of is as follows:

"The duties owed with respect to chattels in the possession of a business invitee are the same as the duties owed to the business invitee personally. (Plaintiff's No. 8.)

"When plaintiff brought this horse, Romanticon, to the Bay Meadows race track, he did so at the implied, if not the express, invitation of the owners of the track, and plaintiff thereupon became a business invitee.

"Upon those owners the law places the duty of exercising ordinary care so as not unnecessarily to expose the invitee, or his horse, to danger or accident and, to that end, to keep it in a reasonably safe and sanitary condition the race track made available for the invitee's use, and which the latter is expressly or impliedly invited to use. (Plaintiff's No. 17.)''

■ Defendant, seeking to bring himself within the rules applicable to gratuitous bailees, argues that because no charge was made, the plaintiff was at most a licensee, to whom the defendant owed no affirmative duties. The benefit to the defendant need not be measured in monetary terms. (*Edwards* v. *Hollywood Canteen,* 27 Cal.2d 802 [167 P.2d 729].) The plaintiff was on the premises for the purpose of aiding in the carrying out of the defendant's business objective and clearly a business invitee. (*Hovencamp* v. *Union Stockyards Co.,* 107 Tex. 421 [180 S.W. 225], holding that a stockyard

must exercise ordinary care like a livery stable keeper.) We think the above quoted instruction is correct.

The third and final error complained of on appeal is the court's instruction to the jury to disregard the waiver of liability signed by the plaintiff's trainer in the application for stable space. This instruction was correct as the waiver was not pleaded in any of the defendant's pleadings. ■ It has long been the rule in this state that waiver is an affirmative defense which is itself waived if not pleaded in the answer. (*Harris* v. *National Union etc. Cooks & Stewards,* 98 Cal.App. 2d 733 [221 P.2d 136]; *Pohle* v. *Christian,* 21 Cal.2d 83 [130 P.2d 417].)

We conclude that no prejudicial error appears in the record before us.

Judgment affirmed.

Draper, J., and Martinelli, J. pro tem.,* concurred.

A petition for a rehearing was denied November 19, 1958.

*Assigned by Chairman of Judicial Council.